[No. H018367. Sixth Dist. Dec. 11, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE PAUL VIGIL, JR., Defendant and Appellant.

486

488

**COUNSEL**

Arthur Dudley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman

and Jeffrey M. Laurence, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, J.**—Defendant was convicted by jury trial of violating the sex offender registration statute (Pen. Code, former § 290, subd. (f)) by failing to notify law enforcement that he had changed his residence address. The jury also found true allegations that defendant had suffered four prior convictions within the meaning of Penal Code sections 667, subdivisions (b) to (i) and 1170.12. Defendant admitted an on-bail enhancement (Pen. Code, § 12022.1) allegation. He was committed to state prison for a term of 25 years to life for the substantive offense and given a two-year term for the on-bail enhancement. On appeal, defendant argues that (1) his conviction is not supported by substantial evidence, (2) the trial court prejudicially erred in failing to give sua sponte instructions to the jury that the "addition of a second address" did not trigger the duty to notify law enforcement, (3) the trial court's mens rea instructions were prejudicially erroneous, (4) the trial court prejudicially erred in refusing to instruct on mistake of fact, (5) the statutory provision requiring a sex offender to notify law enforcement when he changes his residence address is unconstitutionally vague as applied to him, (6) defendant's conviction cannot be upheld because he was not given the statutorily required notification, (7) the jury was presented with a legally incorrect theory of guilt and (8) the on-bail enhancement sentence must be stayed because defendant was not convicted of the offense for which he was out on bail. Only defendant's final contention has any merit. We modify the judgment to stay the two-year term imposed for the on-bail enhancement and affirm the modified judgment.

### Pretrial Procedural Background

Defendant was charged by information with failing to inform law enforcement that he had changed his residence address (Pen. Code, former § 290, subd. (f)).[1] It was further alleged that defendant had suffered five prior convictions within the meaning of Penal Code sections 667, subdivisions (b) to (i) and 1170.12 and that he had been out of custody on bail when he committed the substantive offense (Pen. Code, § 12022.1). The prosecution subsequently dismissed one of the five prior conviction allegations, and only four prior conviction allegations were placed before the jury.

---

[1] The information actually alleged a violation of subdivision (g)(2), but the parties agree that the substantive allegation of which defendant had notice was an allegation of a violation of subdivision (f).

Defendant filed a very brief pretrial motion to dismiss under Penal Code section 995 that asserted that he should not have been held to answer because he had not been given proper notice of his registration obligations and he had not acted willfully. Defendant later made a more substantive motion to dismiss based on (1) the government's lack of compliance with Penal Code former section 290's mandatory notice provisions when defendant was released from custody in 1995, (2) the government's failure to properly index defendant's registration forms, (3) the insufficiency of the evidence of willfulness in light of the lack of notice and (4) the unconstitutionality of Penal Code former section 290. The constitutional challenge was an assertion that the statute was "void for vagueness" or "overbroad" both on its face and as applied. The basis for this challenge was his assertion that a person released from jail or prison would not know that he had to notify law enforcement of a change of address if he was returning to the address at which he was registered before his incarceration. Defendant also filed a demurrer to the information on similar grounds. The motion to dismiss was denied, and the demurrer was overruled.

The prior conviction allegations were bifurcated. The court ruled that defendant's prior convictions would be admissible to impeach him if he testified at trial. Defendant admitted the on-bail enhancement allegation. Defendant also admitted the element of the substantive offense that he had suffered a prior rape conviction.

### The Prosecution's Case at Trial

In his opening statement, the prosecutor identified the charged offense as defendant's failure "to inform the San Jose Police Department that he had changed his address" from his last registered address of 54 Floyd Street in San Jose. The prosecutor asserted that the evidence would establish that defendant was no longer residing at the Floyd Street address but instead was living both at his mother's address on Fifth Street in San Jose and at his father's address on Buena Vista in an unincorporated area of Santa Clara County.

The prosecution's evidence showed that defendant was released from prison in July 1987. When he was released, he was informed of his obligation to register, that the obligation would continue for his "lifetime," and that he "must upon changing my residence inform in writing within ten days the law enforcement agency with which I last registered." After his release, defendant initially registered with the Santa Clara County Sheriff's Department. The address he registered at that time was his father's address on South Buena Vista Street in an unincorporated area adjacent to San Jose.

Defendant was provided with a registration receipt for his initial registration. Defendant registered again in March 1990. The 1990 registration forms sought the registrant's "current residence" and "home address." Defendant provided the address of 54 Floyd Street in San Jose where he, his girlfriend and their children were residing as his "current residence" and his "home address." When he registered in 1990, defendant was again informed that his registration obligation was a lifetime obligation and that he was required to notify law enforcement of any change of address.

Sometime after May 1991, defendant signed a rental agreement for 54B Floyd Street. In January 1992, defendant was still living at the Floyd Street address and identifying that address as his home. In April 1992, defendant identified the Floyd Street address as his "current address" on a court document. This information was verified by defendant's then girlfriend. On this same document, he identified his "[p]revious address" as the Buena Vista address and stated that his residence at the Buena Vista address had lasted for about four months. He never reregistered, updated his registration or notified any law enforcement agency that he had changed his address at any time between March 1990 and his arrest in February 1996. At no time did defendant ever inform law enforcement that he was residing at an address on Fifth Street in San Jose or that he was no longer residing at 54 Floyd Street in San Jose. In October 1995, defendant listed a Fifth Street address as his address on a W-4 form for an employer. In December 1995, defendant provided the Fifth Street address to the Department of Motor Vehicles as his address for his driver's license. He was also receiving mail and telephone calls at that address. It was undisputed that defendant was not residing at 54B Floyd Street at any time between July 1995 and February 1996 and that he had in fact not lived at that address since prior to 1993.

On January 31, 1996, a weekday, plainclothes police officers went to defendant's mother's Fifth Street address looking for defendant. They had obtained this address for defendant from the Department of Motor Vehicles after failing to find him at the Floyd Street address that he had most recently registered. The police officers had not contacted the Santa Clara County Sheriff's office in their search for defendant. They spoke with defendant's mother without first identifying themselves as police officers. She told them that defendant had been alternating between living there with her and living with his father. Defendant's mother informed the police officers that defendant had stayed with her "last night and every night this week." She told them that he had clothes at her residence. She did not provide them with the address or telephone number for defendant's father's residence although she did tell them that it was on Buena Vista. Defendant was not present at the Fifth Street address at the time. One of the police officers left a business card

with defendant's mother and asked her to have defendant call him. Later that day, defendant telephoned the officer. Defendant admitted to the officer that he was living at both his mother's residence and his father's residence. When the officer mentioned defendant's registration obligation, defendant said he did not need to register because his offenses had occurred "more than ten years ago." Police officers returned to the Fifth Street address the next day, also a weekday, about 7:00 p.m. and found defendant taking a shower.

Defendant's mother testified at trial that defendant was not residing with her but solely with his father. She admitted that she was aware that, because she ran a licensed daycare center out of her home, she was not permitted to have a registered sex offender in her home and could lose her license if she admitted that defendant was living with her. She admitted that defendant would "sometimes" sleep at her residence "mostly weekends" and also on some weeknights. She also conceded that there was never a month between July 1995 and February 1996 when defendant did not spend at least one night at her residence. Defendant's mother also testified that defendant kept some clothes in her residence.

Defendant's motion for acquittal at the close of the prosecution's case-in-chief was denied. He also renewed his motion to dismiss on constitutional grounds. This motion too was denied.

### The Defense Case at Trial

The defense case was laid out in its opening statement. The defense conceded that defendant was required to register as a sex offender due to his prior conviction and that he had been properly notified of this obligation when he was released from prison in 1987. Defendant's trial counsel also pointed out that defendant had updated his registration to reflect the Floyd Street address after he "started living there for days or weeks at a time." He asserted that defendant had done so because he had been advised that "it would be a good idea if you're going to be spending time at this second address, 54 Floyd Street, B, to also register there." Defendant's trial counsel interpreted defendant's 1990 registration as the addition of a "second address" so that defendant "was registered at two addresses." Thus, the defense case was that defendant had remained registered at the Buena Vista address through the time of his arrest. Defendant's trial counsel stated that the evidence would show that defendant "never used 370 North Fifth Street as a residence" but always resided at the Buena Vista address.

Although defendant's trial counsel had indicated to the court at the commencement of trial that defendant would testify, during the defense case

he indicated and defendant confirmed that defendant would not testify. There was no evidence that defendant had been renotified of his registration obligations when he was released in July 1995. Nor was there any evidence that defendant had been explicitly informed that updating his registration with a new address would "cancel" or "supersede" a prior registered address. There was also no evidence that defendant had received a registration receipt in March 1990 when he registered the Floyd Street address. The police department did not keep records of receipts since receipts were given to registrants.

Defendant's mother testified that defendant was living with his father at the Buena Vista Street address from the summer of 1995 until his arrest in February 1996. She insisted that defendant had not resided with her and had never been in the residence when children were present. Defendant's mother testified that defendant had merely spent the two nights prior to his arrest at her residence because he was cleaning out her garage. She claimed that she had merely told the police that he had stayed with her the last two days and that she had told them that he lived with his father. She testified that defendant did not have a bedroom in her residence but slept on the couch in a children's play area when he did spend the night.

Defendant's father testified that defendant had lived with him at the Buena Vista address "[m]ost of the time" from 1987 to 1990 and in 1995 and 1996. At some point, defendant began spending some of his time at the residence of his girlfriend. However, he still stayed with his father "a lot of times." In 1995, defendant returned to the Buena Vista address and "lived with me there for a while." Defendant's father had little memory for specifics. "I can't recall because he was coming back and forth, so I can't recall." "To tell you the truth, he's been with me most of the time. He comes and goes . . . ." He could not say how often defendant stayed at his residence between July 1995 and February 1996. "I couldn't tell you, but I know he stayed quite a bit with me. I can't tell you exactly how long." When pressed for specifics, he testified: "He's a grown man. He was in and out. What can I say? But most of the time he did spend with me." He claimed to be unaware that defendant had ever spent the night at defendant's mother's residence, and he insisted that defendant had spent every night at his residence during the week preceding January 31, 1996. Defendant's father also insisted that defendant lived with him from July 1995 to the time of his arrest. Defendant's father testified that defendant kept some clothes at his father's residence but kept most of his work tools at his mother's residence and received his mail at his mother's residence.

Defendant's son, who lived with defendant's father, testified that defendant had divided his time between the Floyd Street address and the Buena

Vista address between 1990 and 1992. There were only two beds at the Buena Vista address. When defendant spent the night there between the summer of 1995 and February 1996, defendant's son would give up his bed to defendant and sleep on the couch.

A number of other witnesses testified that they had seen defendant at defendant's father's residence on a few occasions when they were visiting there. One of defendant's son's friends testified that he had seen defendant at the Buena Vista address on alternate weekends between July 1995 and February 1996. A neighbor and friend of defendant's father testified that she had seen defendant's truck parked near his father's residence "[e]very day" from July 1995 to January 1996. This neighbor had worked at night and had seen the truck parked during the day. Another neighbor of defendant's father testified that she had seen defendant at his father's residence "[l]ike two, three days a week, like weekends" between July 1995 and January 1996. Defendant's former girlfriend testified that defendant had never lived with her at the Floyd Street address between 1990 and 1992 although he had sometimes spent the night there. Instead, he had always spent most of his time living at the Buena Vista address.

### Closing Arguments

The prosecutor characterized the "crux" of the defense case as being "54 Floyd Street was never his address" and "he's always been living at Buena Vista since 1967." The prosecutor challenged this defense by pointing out that in 1992 defendant had claimed Floyd Street as his current address and Buena Vista as his previous address. Similarly, the prosecutor noted that in 1995 defendant gave an employer and the Department of Motor Vehicles the Fifth Street address as his address. The prosecutor also noted that defendant had told a police officer just before his arrest that he lived at both the Fifth Street address and the Buena Vista address.

The prosecutor argued that defendant had committed the charged offense of "failure to register" in one of two ways. He had failed to inform law enforcement that he had changed his address when, in July 1995, he was released from custody and did not return to the Floyd Street address at which he had most recently registered. Alternatively, the prosecutor argued that, even if defendant had still been registered at the Buena Vista address and had returned there, he had committed the charged offense by failing to inform law enforcement when he began residing, at least part of the time, at the Fifth Street address in 1995.

As evidence of defendant's intent, the prosecutor identified defendant's statement to the police officer he telephoned on January 31. Defendant had

told this officer that he did not need to register because "that happened ten years ago." Since defendant had been fully informed that the registration obligation continued for his lifetime, the prosecutor contended that this statement evidenced a conscious decision by defendant not to comply with his obligation. The prosecutor also argued that "[t]he fact that he registered at 54 Floyd Street demonstrates the fact that he knew of the requirement if he changed his address he had to notify law enforcement officials."

Defendant's trial counsel acknowledged the prosecutor's alternative theories. As to the first theory, he argued that the 1990 "registration" at Floyd Street "did not cancel the registration he then had at 483 South Buena Vista." Defendant's trial counsel maintained that defendant had always lived at the Buena Vista address with his father. He contended that the Floyd Street registration was simply the registration of "a second address." With regard to the second theory, he asserted that it was not a crime "to have an address which is an additional address to the one you're registered at as your residence address under Penal Code 290." He claimed that defendant did not have a "residence" at the Fifth Street address because his "home" from July 1995 to February 1996 where he "was living" was the Buena Vista address.

*Further Procedural Background*

After the jury had been instructed and had retired for its deliberations, defendant's trial counsel again moved for dismissal. He claimed that there was insufficient evidence of willfulness and insufficient evidence that the Fifth Street address was "a residence." He also renewed his earlier motion to dismiss on constitutional grounds. Both motions were denied. The jury deliberated for less than two and a half hours before returning a guilty verdict on the substantive count. The four prior conviction allegations were then tried to the jury, and the jury returned true findings on these allegations.

Defendant sought to bring a motion in propria persona for new trial. His trial counsel stated on the record that he had not filed a motion for a new trial "[b]ecause in my view, the jury verdict is a finding of fact which passed and satisfies the substantial evidence rule or test." He noted that "[t]here clearly is [substantial evidence] in this case" to support the jury's verdict. Defendant's trial counsel asked the trial court to strike three of the four prior conviction findings under Penal Code section 1385 or as cruel and unusual punishment. The trial court declined to strike any of the findings. The court committed defendant to state prison for a term of 25 years to life for the substantive offense and a two-year term for the on-bail enhancement. Defendant filed a timely notice of appeal.

## Discussion

### A. *Sufficiency of the Evidence*

■ Defendant asserts that his conviction for failing to notify law enforcement that he had changed his residence address is not supported by substantial evidence. His appellate argument is that he "merely added a second address and did not change an address." He concedes that a sex offender who lives at two different residences must *register* both addresses (*People v. Horn* (1998) 68 Cal.App.4th 408, 415-419 [80 Cal.Rptr.2d 310]), but he argues that a sex offender's failure to register both of his residences is a violation of Penal Code former section 290, subdivision (a)(1)'s registration requirement rather than the offense charged here, a violation of Penal Code former section 290, subdivision (f)'s notification requirement. We reject defendant's argument.

In a nutshell, the case presented at trial showed the following facts. Defendant registered at an address on Buena Vista in 1987. In 1990, he registered at an address on Floyd Street. In 1992, he was incarcerated. In 1995, he was released and began living at the Buena Vista address. He did not register any additional addresses after 1990 nor did he notify law enforcement that he was no longer living at the Floyd Street address or that he was now living at the Buena Vista address. The prosecution presented evidence that defendant subsequently began living, at least some of the time, at an address on Fifth Street. He did not notify law enforcement that he was now dividing his time between the Buena Vista address and the Fifth Street address. Defendant challenged only the prosecution's evidence that he was residing at the Fifth Street address. He presented evidence aimed at establishing that he was residing solely at the Buena Vista address.

The twists and turns of defendant's appellate argument weave their way through Penal Code former section 290 in a corkscrew fashion. He urges, as he did in the trial court, that his 1990 registration of the Floyd Street address was merely the addition of a second address, which did not cancel or supercede his registration of the Buena Vista address. He then asserts that his "return" to the Buena Vista address in 1995 did not require him to register or to inform law enforcement that he had changed his address since he had previously registered this address in 1987. When defendant began living at the Fifth Street address some of the time, so his argument goes, "defendant did not 'change' his address to a 'new' address" because a "change of address" does not occur when a person "merely establishes or uses a second residence in addition to one he or she already has in use."

We cannot accept defendant's argument that a person who establishes a "second residence" does not "change" his or her "residence address" within

the meaning of Penal Code former section 290, subdivision (f)'s notification requirement. The only support defendant cites for this proposition is *People v. Ramirez* (1967) 253 Cal.App.2d 910 [61 Cal.Rptr. 309]. The statute involved in *Ramirez* required certain narcotics offenders to notify law enforcement of a change of address. The language of the provision was very similar to the language of subdivision (f)'s requirement that certain sex offenders notify law enforcement of a change of address. Ramirez registered a motel as his address. He then spent three weeks staying with a woman in a second motel but did not notify law enforcement. He was contacted in the second motel and searched by a police officer. Heroin was found on his person, and he was convicted of possession. The issue on appeal was whether the search was valid. The search could only have been valid if the officer had reasonable cause to believe that Ramirez was in violation of the notification provision for failing to inform law enforcement that he was staying at the second motel. The Court of Appeal reversed. It deemed Ramirez's three-week stay with the woman "on a day-to-day basis" at the second motel a "sojourn" that was nothing more than "transitory" and concluded that it did not constitute a "change of residence address" within the meaning of the narcotics offender registration law's notification requirement. (*Ramirez*, at pp. 910-912.)

*Ramirez* provides no support for defendant's argument. The underlying basis for *Ramirez*'s holding was that Ramirez's transitory visitation with a woman at a location other than his registered residence address did not establish that location as a "residence" within the meaning of the narcotics offender registration law. The narcotics offender registration law at that time required a narcotics offender to register "within 30 days of his coming into any county or city, or city and county in which he *resides or is temporarily domiciled* for such length of time . . . ." (Former Health & Saf. Code, § 11850, italics added.) The narcotics offender registration law did not mention "temporary" residences. At the time of *Ramirez*, a "residence" was defined as "any factual place of abode of some permanency, more than a mere temporary sojourn." (*Smith v. Smith* (1955) 45 Cal.2d 235, 239 [288 P.2d 497].) Further, a person could have only one "domicile," but could have multiple residences. (*Id.* at p. 239.) Because the court in *Ramirez* concluded that Ramirez's stay with the woman in the second motel was merely a temporary sojourn, the second motel did not qualify as Ramirez's "residence" and therefore he had not changed his residence address within the meaning of the narcotics offender registration law then in effect.

In contrast, the sex offender registration law at issue here (the 1996 version of Pen. Code, former § 290) required a sex offender to register "within 14 days of coming into any city, county or city and county in which

he or she *temporarily resides* or is domiciled for that length of time . . . ." (Former Pen. Code, § 290, subd. (a), italics added.) Subdivision (f) required a registrant to inform law enforcement when he or she changed a residence address. "If any person required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address." Since the sex offender registration law explicitly required registration of *temporary* residences, it follows that this law's requirement of notification when a person "changes" a "residence address" also applies to *temporary* residences. Because the statute construed in *Ramirez* did not apply to temporary residences, *Ramirez* did not address the question of "changes" with regard to temporary residences. Moreover, the issue in *Ramirez* was not what constituted "changes" of address but instead what constituted a nontemporary "residence."

Defendant does not challenge the sufficiency of the evidence to support a finding by the jury that he was at least temporarily residing at both the Buena Vista address and the Fifth Street address. Nor does he challenge the undisputed evidence that he was *not* residing at the Floyd Street address. Instead, he argues that neither his "return" to the Buena Vista address nor his "addition" of the Fifth Street address as a second residence address "change[d]" his residence address within the meaning of Penal Code former section 290, subdivision (f)'s notification requirement.

His interpretation of the word "changes" in Penal Code former section 290, subdivision (f) is absurd. Although he concedes that a registrant who adds a second address must *register* that address in compliance with subdivision *(a)*, he argues that a person who adds (or, it must be assumed, as to the Floyd Street address, eliminates) a second address has not *changed* his residence address within the meaning of subdivision *(f)* and therefore need not notify law enforcement. He assumes that "changes" refers *only* to the *substitution* of one address for another rather than to the *elimination* of one of two registered addresses or the *addition* of a second address to an existing registered address.[2]

Defendant supports his argument by an interpretation of Penal Code former section 290, subdivision (f), which posits that requiring notification when a person changes a residence address would necessarily cancel or

---

[2]Of course, under the prosecution's evidence, which defendant does not challenge on appeal, he substituted the Fifth Street address for the Floyd Street address as his "second address" without notifying law enforcement. Thus, even if his unwieldy statutory interpretation could possibly succeed, the facts established at trial would still show that he violated subdivision (f).

supercede the previously registered address thereby presenting an unresolvable dilemma for someone who is merely adding a second residence address rather than substituting a new residence for an old residence. We can find nothing in Penal Code former section 290 which supports this contention. By explicitly referring to "temporary" residences, Penal Code former section 290 clearly contemplated that a registrant might need to register multiple addresses. Hence, it would be unreasonable to assume, as defendant does, that subdivision (f)'s broadly worded notification requirement was not intended to apply to the elimination of one of multiple registered addresses or the addition of an unregistered second address to an existing registered address.[3]

The language of Penal Code former section 290, subdivision (f) itself is also not amenable to defendant's tortured interpretation. "If any person required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address." Although the singular "address" is used, no one could reasonably conclude from this language that someone with multiple registered addresses is not subject to this provision. Instead, the only rational interpretation of the subdivision is that notification is required when a person "changes" *any* "residence address."

Defendant's theory at trial was that he had not changed residence addresses because (1) he had properly registered multiple residence addresses, Floyd Street and Buena Vista, (2) he was living solely at the registered Buena Vista address and (3) he was not living at the Fifth Street address. However, any rational interpretation of "changes" would include the conduct upon which defendant sought to premise his claim of innocence. The primary definition of the verb "change" is "to make different in some particular." (Webster's Collegiate Dict. (10th ed. 1993) p. 190.) Under defendant's theory, he eliminated one of two registered addresses but failed to inform law enforcement of this fact. The deletion of one of two registered residence addresses undoubtedly makes a person's residence address "different." Similarly, under the prosecution's theories, defendant either substituted the Buena Vista address for the Floyd Street address without notifying law enforcement, or added the Fifth Street address to the Buena Vista address

[3]When the second address is within the same jurisdiction as the first address, one might argue that Penal Code former section 290, subdivision (a)'s registration requirement, as it read in 1996, did not require *registration* of the second address since the person was already present within the jurisdiction and had registered. Here, the Buena Vista address and the Fifth Street address were not in the same jurisdiction since the Buena Vista address was in the unincorporated area while the Fifth Street address was within the San Jose city limits. The Floyd Street address was, like the Fifth Street address, within the San Jose city limits.

without notifying law enforcement, or both. The substitution of one address for another certainly makes a person's address "different," as does going from having a single residence address to having two residence addresses. There is no theory under which defendant's conduct did not violate his notification requirement. We reject defendant's assertion that no violation of Penal Code former section 290, subdivision (f) occurs if one of a registrant's residence addresses remains unchanged while another residence address is added, eliminated or otherwise altered without notification of law enforcement.

## B. *Instructions*

Defendant claims that the trial court prejudicially erred in (1) failing to give sua sponte instructions to the jury that the "addition of a second address" did not trigger the duty to notify law enforcement, (2) giving inadequate mens rea instructions and (3) refusing to instruct on mistake of fact. As we have already concluded in the previous section of this opinion, Penal Code former section 290, subdivision (f) *does* impose a duty to notify law enforcement of the "addition of a second [residence] address." Therefore the court did not err in failing to give instructions to the contrary.[4] Nor did the court err in its mens rea instructions or in refusing to give mistake of fact instructions.

### 1. *Mens Rea Instructions*

■ The court instructed the jury that the charged offense could only be committed if defendant "willfully failed to inform in writing within ten days" the law enforcement agency "with whom he last registered of the new address." The court defined the term "willfully" for the jury. "The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. The word 'willfully' does not require any intent to violate the law or to injure or to acquire any advantage."

Defendant asserts that these instructions were inadequate because they failed to inform the jury that he could not be convicted unless he knew that Penal Code former section 290, subdivision (f) "applied to his or her situation" and willfully failed to comply with its requirements. He asserts that the trial court was required to instruct the jury that he could be

---

[4]The jury was instructed that a person could have more than one "residence,"and defendant does not claim that this instruction was improper. "A person may have more than one residence or domicile or temporary residence or a temporary domicile at the same time. Residence is the equivalent of home, something more than passing through or a presence for a limited visit."

convicted only if he "actually knew of the duty to report the change of address . . . ." He claims that the trial court's error in failing to so instruct was not harmless beyond a reasonable doubt because there was no evidence that he knew that he was required to report a change of address "when one merely was adding a second or additional residence to an already existing residence."

In his original respondent's brief, the Attorney General contested defendant's assertion that knowledge was an element of the offense. After the completion of the original appellate briefing in this case, the California Supreme Court ruled in *People v. Garcia* (2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590] that a willful violation of Penal Code former section 290 occurs only where the defendant "actually know[s] of the duty to act" and "what act is required to be performed." (*Garcia*, at p. 752.) The jury instructions in *Garcia* had included the same willfulness instructions given here but had also included an "ignorance of the law is no excuse" instruction, which was not given to the jury in this case. (*Garcia*, at p. 754.) Garcia's trial counsel had been precluded by the court from arguing that Garcia should be found not guilty because he had not been aware of the registration requirement, and the prosecutor was permitted to argue that lack of knowledge was not a defense. (*Garcia*, at pp. 754-755.) The California Supreme Court found that the trial court had erred in failing to instruct on the knowledge element, giving the "ignorance of the law is no excuse" instruction and allowing the jury to be led to believe that knowledge was not necessary to a finding of guilt. (*Ibid.*) Nevertheless, the California Supreme Court found the error harmless beyond a reasonable doubt because the jury had necessarily concluded that defendant had been properly informed of his registration obligation and the only evidence that defendant had been unaware of his obligation was his own testimony that he had not been informed of his registration obligation which was discredited by the jury's finding of notice. (*Ibid.*) Both the Attorney General and defendant submitted supplemental letter briefs addressing *Garcia*.

Based on *Garcia*, we find the error harmless beyond a reasonable doubt under the circumstances of this case. The evidence presented at trial established without dispute that defendant was properly notified both in 1987 and 1990 that he was required both to register and to inform law enforcement if he changed his address. He properly registered the Buena Vista address, and, in 1990, he notified law enforcement that he had changed his address to the Floyd Street address. His notification to law enforcement of the Floyd Street address verified that he was aware of his obligation to notify law enforcement of any change in his residence address. Defendant never thereafter reregistered, updated his registration or notified any law enforcement agency

that he had changed his address prior to his February 1996 arrest. However, he indisputably stopped residing at the Floyd Street address no later than 1993. At the time of his 1996 arrest, defendant admitted that he was living at the Fifth Street address, but he claimed he did not need to apprise law enforcement of his current address because his sex offenses had occurred "more than ten years ago."

As the evidence indisputably established that defendant had been repeatedly and properly notified of his lifetime registration and notification obligations and that he had previously complied with those obligations, and defendant did not testify at trial regarding his actual state of mind, the trial court's omission of explicit instruction on the knowledge element of the offense was harmless beyond a reasonable doubt. There is no reasonable possibility that the omitted instruction would have caused any juror to doubt whether defendant was aware of his registration and notification obligations.

### 2. *Mistake of Fact Instructions*

■ Defendant claims that the trial court prejudicially erred by failing to instruct sua sponte on mistake of fact because there was evidence that "defendant reasonably and in good faith believed that he had not changed an address within the meaning of subdivision (f) of former section 290 of the Penal Code when, in the latter part of 1995, he started spending part of his time living at [the Fifth Street address] while during the other part of his time he was living at [the Buena Vista address]."[5] Because this theory was not supported by substantial evidence, the trial court did not err in failing to instruct on it.

This alleged mistake of fact applies only to the prosecution's theory that defendant had violated Penal Code former section 290 by failing to inform law enforcement when he began residing part of the time at the Fifth Street address. Defendant disputed at trial that he was living at the Fifth Street address at all, but the jury could only have convicted him on this theory if it found that he was living at the Fifth Street address. Certainly there was no evidence that defendant honestly did not know where he lived. He provided the Fifth Street address to his employer and the Department of Motor Vehicles and used it for other purposes. When he was arrested for the current offense, defendant admitted that he was living at the Fifth Street address, but

---

[5]Defendant's trial counsel asked the trial court to instruct the jury on mistake of fact with CALJIC No. 4.35. He claimed that there was evidence of two mistakes of fact: (1) that defendant mistakenly believed that he was concurrently registered at both the Floyd Street address and the Buena Vista address between 1987 and 1992 and (2) that defendant mistakenly believed that he was not using the Fifth Street address "as a residence." The court concluded that the instruction was not supported by the evidence.

he claimed he did not need to register because his sex offenses had occurred "more than ten years ago."

Defendant's appellate counsel speculates that defendant may have believed that his change from living solely at the Buena Vista address to living partly at that address and partly at the Fifth Street address was not a change of address which he was obligated to report to law enforcement. He bases this speculation on the fact that one of defendant's 1987 registration cards stated that the card should be surrendered in exchange for a new registration receipt showing "current address" when a change of address was reported to law enforcement. Defendant's appellate counsel claims that the information on this card would lead a reasonable person to believe that the addition of a second address did not require notification of law enforcement because surrender of the old registration card in exchange for a new receipt showing *only the second address* would not accurately reflect both addresses. This speculation is neither supported by the language on the card nor reasonable. Any reasonable person would have understood this language to require one to surrender the old card and obtain a new receipt which listed *all current addresses*. Absolutely nothing in its language indicated that a person could not obtain a new registration receipt listing multiple current addresses. Moreover, it would be unreasonable to conclude from the language on the registration card that a registrant's lifetime obligation to notify law enforcement whenever he or she changed addresses was not intended to apply to persons with multiple addresses. Finally, defendant's statements at the time of his arrest rebutted any inference that he was operating under such a mistake of fact since he attributed his failure to notify law enforcement to his alleged belief that his lifetime registration obligation had miraculously expired.

The trial court did not err in failing to give mistake of fact instructions.

### C. *Vagueness Challenge to Statute as Applied*

Defendant made a pretrial challenge to the constitutionality of the statute on the ground that Penal Code former section 290, subdivision (f) was vague as applied to a defendant who returns after a period of time in custody to the address at which he had registered prior to going into custody. He repeats this challenge on appeal.

"[A]n as applied challenge assumes that the statute or ordinance violated is valid and asserts that the manner of enforcement against a particular individual or individuals or the circumstances in which the statute or ordinance is applied is unconstitutional." (*Tobe v. City of Santa Ana* (1995) 9

Cal.4th 1069, 1089 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) " 'The rule is well established . . . that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations.' . . ." (*Tobe*, at p. 1095, citation omitted.)

Defendant's as-applied challenge to the statute is misdirected because the prosecution did not seek to enforce the statute in the manner in which defendant claims it is vague. The prosecution unambiguously asserted that defendant's only current registered address was the Floyd Street address but he was living at the Buena Vista address and the Fifth Street address. It did not seek to apply the statute to a person who had returned after a period of custody to the address at which he had been registered when the custodial period began. It was the defense that asserted that defendant's "return" to the Buena Vista address was *not* a violation of the statute because his registration of the Floyd Street address had only been the addition of a second address to his previous registration of the Buena Vista address. The jury's verdict implies factual findings which eliminate any basis for defendant's challenge. Either the jury found that defendant's registration of the Floyd Street address was a substitution of this address for the Buena Vista address rather than an addition of this address to the Buena Vista address or the jury based the conviction on defendant's residence at the Fifth Street address, an address which he had never provided to any law enforcement agency. Under neither scenario was defendant's conviction based on his return after a period of custody to an address at which he had been registered when the custody commenced. We reject defendant's challenge.

### D. *Notice to Defendant*

 Defendant asserts that his conviction cannot be upheld because Penal Code former section 290, subdivision (b) was not complied with when he was released from custody in 1995. This issue was also raised by means of a pretrial motion to dismiss and personally argued by defendant after the jury's verdict. The trial court rejected this assertion. We do also.

"Any person who . . . is released, discharged, or paroled from a jail, state or federal prison, school, road camp, or other institution where he or she was confined because of the commission or attempted commission of one of the offenses specified in subdivision (a) . . . shall, prior to discharge, parole, or release, be informed of his or her duty to register under this section by the official in charge of the place of confinement . . . ." (Former Pen. Code, § 290, subd. (b).)

It is undisputed that defendant was properly informed of his lifetime duty to register when he was released from prison in 1987. He registered in 1987 and 1990. In 1992, defendant was arrested for new offenses, convictions for which also would have triggered a duty to register under Penal Code former section 290. Defendant remained in custody until 1995 when his convictions for these new offenses were reversed on appeal. He was returned to the county jail and released on bail pending retrial.

Defendant claims that jail officials were required to inform him of his duty to register when he was released from jail in 1995 pending retrial of offenses to which the duty to register would have applied upon conviction. His parsing of the notification requirement is illogical in the extreme. On its face, this notification requirement cannot require notification to a person whose custody at the time of release is based on *mere allegations* that he or she committed an offense to which Penal Code former section 290's registration requirement would be applicable. Penal Code former section 290's registration requirement only applies to those who are *convicted* of one of the specified offenses. Yet, if defendant's interpretation of the notification requirement was correct, every person released from jail with charges pending for a specified offense would have to be notified of a registration requirement that was *wholly inapplicable* to that person because he or she had not yet suffered a *conviction* for an offense triggering the registration requirement.

Even if, on a highly technical analysis, the precise statutory language might be potentially susceptible to defendant's interpretation, his interpretation is so absurd that it must be rejected. ■ " ' "[W]here the language of a statutory provision is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted." . . .' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 305 [58 Cal.Rptr.2d 855, 926 P.2d 1042], citations omitted.) "Courts will not favor a defendant's interpretation if it would lead to results 'that are contrary to legislative intent or that fail to prevent the harm that is identified in the statute or that override common sense and create palpable absurdities.' . . ." (*People v. Townsend* (1998) 62 Cal.App.4th 1390, 1396-1397 [73 Cal.Rptr.2d 438], citation omitted.)

■ The purpose of the notification requirement was unambiguously to inform a person of his or her registration obligation at the time of his or her release from custody for a *conviction* which had triggered Penal Code former section 290's registration requirement. Application of the notice requirement to a person released from a period of custody that was not attributable to a

*conviction* which triggered Penal Code former section 290's registration requirement would not serve the obvious purpose of the notification requirement, defies common sense and is patently absurd. How can a person be informed of a registration requirement if he or she does not have one because he or she has not yet suffered a conviction? Why would the Legislature require notification of a nonexistent duty?

It is no answer for defendant to assert that the notification requirement, as he interprets it, was only intended to apply to those who already had a registration requirement arising from a prior conviction. If the Legislature had intended to require notification of every person subject to a registration requirement upon their release after any custodial period even if it was not attributable to a conviction triggering the registration requirement, it would be unreasonable to limit such a notification to only those instances where the release occurred with charges pending to which a registration requirement might be triggered upon conviction. While it might be conceivable that the Legislature might want those obligated to register to be reminded of their preexisting registration obligations after time in custody, defendant's interpretation would not have that result because no notification would be required where the person obligated to register was in custody for something other than a specified sex offense. Defendant's interpretation of the notification requirement is not rendered any more reasonable by this argument.

Because defendant's interpretation of the notification requirement would require us to conclude that the Legislature acted in an irrational manner, it must be rejected. Any failure of jail officials to notify defendant of his preexisting registration obligation in 1995 did not violate Penal Code former section 290, subdivision (b).

### E. *Alleged Presentation of Legally Incorrect Theory to the Jury*

■ Defendant asserts that "serious prejudicial error occurred" when the court in its instructions to the jury and the prosecutor in his argument to the jury referred to the charged offense as a "failure to register" or a "failure to update registration" rather than as a "failure to notify." He claims that these erroneous references invited the jury to return a conviction based on a crime with which he was not charged thereby depriving him of due process. Defendant does not present this assertion as a claim of instructional error or prosecutorial misconduct. Instead, his claim is based solely on his argument that these references to an uncharged offense amounted to the presentation of the case to the jury on a "legally incorrect" theory.[6]

It is true that the trial court twice misstated the title of the offense. First, in its instructions on the need for unanimity, it said: "The defendant is

---

[6]Notably, defendant's trial counsel also referred to the charged offense in his closing argument as a failure to "reregister" or to "update" the registration.

accused of having committed *the crime of failure to update registration* in a single count of the information. The prosecution has introduced evidence tending to prove that there is more than one act or omission upon which a conviction on that count may be based. [¶] The defendant may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of the acts or omission[s]. However, in order to return a verdict of guilty to Count 1, all jurors must agree that he committed the same act or omission. It is not necessary that the particular act or omission agreed upon be stated in your verdict." (Italics added.)

Second, although the trial court accurately instructed the jury in the language of Penal Code former section 290, subdivision (f) on the elements of the charged offense, it did misstate the title of the offense once during these instructions while otherwise correctly stating both the title and the nature of the charged offense. The trial court instructed the jury that the charged offense was *"the crime of failure to inform a law enforcement agency of new address* with a sexual assault prior" that had been committed when defendant "change[d] his residence address and did fail to inform in writing within ten days the San Jose Police law enforcement agency which whom he last registered . . . with his new address." (Italics added.) The court instructed the jury in the language of the subdivision (f) notification requirement that defendant was charged with violating. "Every person who having previously been convicted of a felony sex offense who is required to register as a sex offender with the chief of police of the city in which he resided or domiciled or temporarily resided or was temporarily domiciled, or with the sheriff of the county if he resided or domiciled or temporarily resided or temporarily was domiciled in an unincorporated area of the county, and who changes his residence address and who failed to inform in writing within ten days the chief of police or the sheriff of the county where he was last registered of the new address is guilty of *the crime of failure to register*, a violation of Penal Code section 290(g)(2) [*sic*]." (Italics added.) The court also informed the jury that it was stipulated that defendant was required to register. The remaining elements of the offense upon which the jury was correctly instructed were: (1) that defendant registered, (2) that defendant "changed his residence address" and (3) that defendant "willfully failed to inform in writing within ten days" the law enforcement agency "with whom he last registered of the new address."

In light of these instructions, there is no possibility that the jury would have interpreted the trial court's two technically incorrect references to the title of the offense to refer to anything other than the charged offense of failing to inform law enforcement of a change of address. To a layperson, there is no perceptible difference between failing to inform someone of a change in one's registered address and failing to "update" one's registration

with that information. Since the trial court's singular reference to a "failure to register" came on the heels of an accurate and complete description of the elements of the charged failure to notify offense, it is inconceivable that the jury could have been misled by the court's inaccurate reference.

Although there were references by both the court and the prosecutor to the charged offense as a "failure to register," the court did not instruct on and the prosecutor did not present any theory to the jury that was based on defendant's failure to "register" rather than his failure to "notify" law enforcement that he had changed his address. The prosecutor argued that defendant had committed the charged offense by either (1) failing to notify law enforcement of his change of address when he did not return to the Floyd Street address after his release from prison or (2) failing to notify law enforcement of his change of address when he began residing, at least at times, at the Fifth Street address. Neither of these theories was based on an uncharged failure to "register" as opposed to the charged failure to notify, and both theories were "legally correct." Defendant's assertion of prejudicial error fails.

## F. *Sentence for Enhancement*

■ Defendant asserts, and the Attorney General concedes, that the sentence imposed for the on-bail enhancement must be stayed because, at the time of sentencing in this case, defendant had not been convicted of the primary offenses for which he was out on bail. (Pen. Code, § 12022.1, subd. (d).) We agree and will so order.

## *Conclusion*

The two-year term imposed for the Penal Code section 12022.1 on-bail enhancement is hereby ordered stayed. The trial court is ordered to prepare an amended abstract of judgment reflecting this modification and to transmit the amended abstract to the Department of Corrections. The modified judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 13, 2002. Kennard, J., was of the opinion that the petition should be granted.