[No. C046512. Third Dist. Sept. 7, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
GARRY LEE VINCELLI, Defendant and Appellant.

648

**Counsel**

William A. Welch and Laurie D. Savill for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Janet E. Neeley, Julie A. Hokans and Maggy Krell, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**RAYE, J.**—Defendant Garry Lee Vincelli was convicted of failing to register as a sex offender after changing his name. (Pen. Code, § 290, subd. (f)(3) (hereafter section 290(f)(3)).)[1] He was sentenced to two years in prison.

On appeal, defendant contends the phrase "changes his or her name" in section 290(f)(3) is unconstitutionally vague as applied to him because it

---

[1] All further statutory references are to the Penal Code.

failed to provide him notice of what he needed to do to conform to the registration requirement and impermissibly allowed the jury to decide its meaning on an ad hoc and subjective basis. We shall affirm the judgment.

## FACTS

In 1975 defendant was convicted of forcible rape and, as a result, was required to register as a sex offender. He registered as a sex offender with the Redding Police Department under the name "Garry Lee Vincelli" on June 24, 1999; July 9, 1999; July 10, 2000; July 9, 2001; November 26, 2001; July 8, 2002; and July 8, 2003.

In November 1995 defendant was issued a California identification card by the Department of Motor Vehicles (DMV) in the name "Jerry Lee Binelli." In September 1997 he was issued a California driver's license by the DMV in the name "Jerry Lee Binelli." The Redding Police Department had no record that "Jerry Lee Binelli" registered as a sex offender.

In June 2000 defendant applied for and obtained a license for his cleaning business, Paramount Maintenance, using the name "Jerry Binelli." One year later, he renewed the license under that name.

In September 2001 defendant, using the name "Jerry Binelli," sold his house on Oxbow Street in Redding to Stvan Glass and his wife. Defendant and his family were planning to move to a new residence on St. Charles Drive. In October 2001 "Jerry Binelli" requested the utility company turn on the electricity at his St. Charles Drive house.

In fall 2001 Linda Gisske of the Redding Police Department began investigating whether defendant had failed to register as a sex offender.[2] She went to the last address at which defendant registered and learned he no longer resided there. The current owner of the house provided her the name and telephone number of "Jerry Binelli." Gisske checked whether "Jerry Binelli" was registered as a sex offender in Redding. He was not.

In November 2001 Gisske located defendant at his residence on St. Charles Drive. She asked him, "[A]re you Jerry Binelli?" Defendant responded, "[Y]es, I am." During the interview at the police investigations office, Gisske removed all the identification in defendant's wallet, which consisted of a

---

[2] Glass had called the Redding Police Department because a neighbor told him she had learned, while in the process of applying to adopt a child, that Glass's house was on the "Megan's Law" Web site. The neighbor needed this issue resolved so she could proceed with the adoption. Glass told her he was not required to register as a sex offender and said he would call the police department.

Social Security card, a California driver's license, a California identification card, insurance cards, and credit cards, all in the name "Jerry Binelli." Defendant admitted to Gisske he used two different names and explained he did so to avoid harassment, find employment, and secure a "good life."

Defendant testified at trial that, in 1995, he gave a coworker $1,200 in return for a Social Security card and a birth certificate in the name of "Jerry Binelli." He did not consider "Jerry Binelli" a false name but, rather, an alias. He used the name to register cars, buy an all-terrain vehicle, turn on and off utilities, procure a bond to insure his business, and obtain a California identification card. Prior to owning Paramount Maintenance, he had never held a job for longer than one year because employers would terminate him when they learned he was a sex offender. Defendant never considered abandoning the name "Garry Lee Vincelli" and held credit cards and a driver's license in that name.

## DISCUSSION

Section 290(f)(3) reads: "If any person who is required to register pursuant to this section *changes his or her name*, the person shall inform, in person, the law enforcement agency or agencies with which he or she is currently registered within five working days. The law enforcement agency or agencies shall forward a copy of this information to the Department of Justice within three working days of its receipt." (Italics added.)

Defendant argues the phrase "changes his or her name," is unconstitutionally vague because it "did not provide him with fair notice of what he should have done to conform with the registration requirement" and "impermissibly allowed the jury to resolve its meaning on an ad hoc and subjective basis, outside of any standard of reasonable certainty." We consider each claim in turn, rejecting both on the merits.

■ The due process clauses of both the United States Constitution and the California Constitution require " 'a reasonable degree of certainty in legislation, especially in the criminal law . . . .' [Citation.]" (*People v. Heitzman* (1994) 9 Cal.4th 189, 199 [37 Cal.Rptr.2d 236, 886 P.2d 1229] (*Heitzman*).) Due process imposes two requirements on a criminal statute to avoid infirmity for vagueness. "First, the provision must be definite enough to provide a standard of conduct for those whose activities are proscribed. [Citations.] Because we assume that individuals are free to choose between lawful and unlawful conduct, 'we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly. Vague laws trap the innocent by not providing fair warning.' [Citations.] [¶] Second, the statute must provide definite

guidelines for the police in order to prevent arbitrary and discriminatory enforcement. [Citations.] When the Legislature fails to provide such guidelines, the mere existence of a criminal statute may permit ' "a standardless sweep" ' that allows police officers, prosecutors and juries ' "to pursue their personal predilections." ' [Citations.]" (*Id.* at pp. 199–200.)

■ In determining whether a statute is sufficiently clear to give fair notice of the conduct it proscribes, "we consider the language of the statute, its legislative history and California decisions construing the statutory language. (*Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 246 [158 Cal.Rptr. 330, 599 P.2d 636].)" (*People v. Albritton* (1998) 67 Cal.App.4th 647, 657 [79 Cal.Rptr.2d 169].) "This analytical framework is consistent with the notion that we 'require citizens to apprise themselves not only of statutory language, but also of legislative history, subsequent judicial construction, and underlying legislative purposes.' [Citation.]" (*Heitzman, supra,* 9 Cal.4th at p. 200.)

■ Section 290(f)(3) requires a registrant to inform the appropriate law enforcement agency within five working days if the registrant "changes his or her name." The term "changes" as used in the sex offender registration statute is not specifically defined. Therefore, we "must look to the language of the statute and 'accord words their usual, ordinary, and common sense meaning based on the language used and the evident purpose for which the statute was adopted.' [Citations.]" (*People v. Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452].)

■ Case law interpreting the word "changes" in the context of sex offender registration is instructive. In *People v. Vigil* (2001) 94 Cal.App.4th 485 [114 Cal.Rptr.2d 331] (*Vigil*), the defendant was convicted of violating former section 290, subdivision (f) for failing to notify law enforcement he had changed his address.[3] (*Vigil, supra,* 94 Cal.App.4th at p. 490.) On appeal, the defendant argued the addition of a second address did not change his address so as to trigger his duty to reregister. (*Id.* at p. 499.) The court labeled the defendant's proposed construction "absurd." (*Ibid.*) It noted the primary definition of the verb "change" in Webster's Collegiate Dictionary (10th ed. 1993) was " 'to make different in some particular' " and explained: "The substitution of one address for another certainly makes a person's address 'different,' as does going from having a single residence address to having two residence addresses. There is no theory under which defendant's conduct did not violate his notification requirement." (*Vigil, supra,* 94 Cal.App.4th at pp. 500–501.)

---

[3] The 1996 version of section 290, subdivision (f) at issue in *Vigil, supra,* 94 Cal.App.4th 495, reads: " 'If any person required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address.' " (*Id.* at p. 499.)

■ There can be no doubt that going from using a single name, "Garry Vincelli," to using two distinct names, "Garry Vincelli" and "Jerry Binelli," made defendant's name "different." Indeed, defendant admitted to Gisske he used two "different" names and explained he did so to avoid harassment, find employment, and secure a "good life." Applying the usual, ordinary, and commonsense meaning of the word "changes," the facial language of section 290, subdivision (f) is sufficiently certain to notify defendant his conduct would require him to reregister as a sex offender.

The legislative history of section 290(f)(3) supports this conclusion. The requirement of reregistration for a sex offender who changes his name was introduced in 1996 in Senate Bill No. 1378 and explained as follows: "Current law requires re-registration when a sex offender moves, but not when he or she changes his or her name. This bill would address this issue by requiring re-registration when a sex offender changes his or her name." (Sen. Rules Com., analysis of Sen. Bill No. 1378 (1995–1996 Reg. Sess.) as amended Aug. 29, 1996.)

Senate Bill No. 1378 adopted the foregoing provision from Assembly Bill No. 401 (Sen. Rules Com., Dig. of Sen. Bill No. 1378 (1995–1996 Reg. Sess.) as amended Aug. 29, 1996), which in turn adopted the provision from Assembly Bill No. 2127 (Assem. floor analysis of Assem. Bill No. 401 (1995–1996 Reg. Sess.) as amended Aug. 19, 1996). According to the author of Assembly Bill No. 2127, "When a sex registrant changes the name on his or her driver's license, by way of the Department of Motor Vehicles and the change is not transmitted to the Department of Justice, he or she can elude detection as a Penal Code Section 290 registrant by law enforcement or by the public through the Child Molester Identification Line's 1-900 telephone database. To avoid such circumvention of registration, AB 2127 would require a registrant to notify law enforcement of his or her name change just as they now must notify them of a change of address." (3d reading analysis of Assem. Bill No. 2127 (1995–1996 Reg. Sess.) as amended May 2, 1996.)

The facts of defendant's case vividly demonstrate the problem sought to be cured by adding a reregistration requirement when a sex offender changes his name. By obtaining identification in the name of "Jerry Binelli," defendant was able to conduct business, both personally and professionally, under an alias that allowed him to elude detection as a sex offender by law enforcement and the public. When Gisske checked the sex offender registration data bank for the name "Jerry Binelli," she found nothing. Not until she tracked down and questioned defendant was she able to clear up the confusion he caused by adopting an alias and failing to reregister. Similarly, Glass was unaware of defendant's identity as a sex offender because defendant sold his Oxbow Street residence under the name "Jerry Binelli."

Defendant claims section 290(f)(3) "impermissibly allowed the jury to resolve its meaning on an ad hoc and subjective basis, outside any standard of reasonable certainty." Defendant argues "the jury did not have a standard by which to judge the conduct at issue," and complains "[t]he jury was told that the legal definition of name change was essentially standardless."

Before evaluating defendant's claim, we recount the instructions given, defense counsel's argument to the jury, and the questions asked by the jury about those instructions.

The court instructed the jury as follows: "The defendant is accused in Count 2 of a violation of Penal Code Section 290(f)(3), a crime.

"Every person who, being required by law to register as a sex offender, changes his name and willfully fails to register the name change with law enforcement within five working days, having knowledge of that requirement to register, is guilty of a violation of Penal Code Section 290(f)(3), a crime.

"In order to prove this crime, each of the following elements must be proved. One, a person is required by law to register as a sex offender.

"That person knew of his requirement to register.

"And three, that person changed his name.

"And four, that person willfully failed to register the name change with law enforcement within five working days.

"In order to show a person willfully failed to register, the People must prove beyond a reasonable doubt that the person had actual knowledge of the duty to register. Knowledge may be inferred from notice, but notice alone does not necessarily prove that the person had actual knowledge."

During closing argument, defense counsel claimed that to change one's name meant to get rid of one's name and never use it again, that defendant never changed his name, and that the law did not require defendant to register his alias. Counsel urged the jury to ask the following questions: "So you have to ask yourself in thinking about what it means to change a name, you can demand this of the prosecution. What do you mean? What does it mean to change a name[?]"

During deliberations, the jury asked the following four questions: (1) what is the definition of "name change"; (2) what is the meaning of "alias"; (3) what is the meaning of "aka"; and (4) when does a name change actually occur.

The parties specifically agreed to the following four answers that the court read to the jury: "there is no legal definition of name change as it applies to this case," "[a]lias has no special legal definition," "AKA is an abbreviation for also known as," and when a name change occurs is a "factual determination for you to decide."

■ "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 108–109 [33 L.Ed.2d 222, 227–228, 92 S.Ct. 2294], italics omitted.) "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " (*Kolender v. Lawson* (1983) 461 U.S. 352, 358 [75 L.Ed.2d 903, 909, 103 S.Ct. 1855] (*Kolender*).)

In *Kolender, supra,* 461 U.S. 352 [75 L.Ed.2d 903], the court considered a statute requiring people accused of loitering to provide "credible and reliable" identification. The court found the statute unconstitutionally vague, noting that the lack of any standard for determining how a suspect should meet the requirement "vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute . . . ." (*Id.* at p. 358.)

■ Unlike the statute in that case, section 290(f)(3) does not vest "virtually complete discretion" in law enforcement officials, prosecutors, and juries. Although the statute contains no legal definition of "changes his or her name," the phrase is accorded its usual, ordinary, and commonsense meaning. The jury was correctly instructed that "name change" and "alias" have no legal definition and that the point at which a name change occurs is a factual question.

Defendant strains to transform simple, straightforward language requiring a sex offender registrant to report the use of a different name into a labyrinthine statutory scheme requiring a jury to assess intent, motive, and conduct. Defendant's real quarrel is not with the lack of standards to guide the jury's deliberation but with the trial court's refusal to import a standard that legitimizes his conduct, viz., that a name change has not occurred so long as a person continues to use his or her former name for some purpose. This interpretation is not supported by the language of the statute and is completely at odds with the statutory purpose of preventing offenders from eluding detection. The notion that an offender may assume a new identity, or even multiple identities, but need only report under his original name is simply absurd. It is difficult to conceive of a circumstance under which defendant's admitted actions in assuming the name "Jerry Lee Binelli" and

using it to obtain a California identification card, a California driver's license, a business license, utility services, and in the sale of a house would not constitute a change of name, despite his continued use of the name Gary Lee Vincelli for certain purposes. Even if the court could have embellished the already clear statutory language, the instructions could not have benefited defendant, whose actions violated the statute under any plausible reading.

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 21, 2005.