[No. A093514. First Dist., Div. Two. Nov. 12, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL EDGAR, Defendant and Appellant.

**COUNSEL**

Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, and George Hindall III, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Michael Edgar (appellant) was convicted, following a jury trial, of one count of willfully violating the notification provisions of the state sex offender registration law. On appeal, he contends (1) there was not substantial evidence that he acquired a new residence address either in addition to or after leaving his Daly City residence address, and (2) the trial court erred by failing to instruct the jury regarding the knowledge element of the charged offense and by instructing the jury that there was no requirement that appellant intended to violate the law. We find there was substantial evidence that appellant acquired a new or additional residence address. Nonetheless, the trial court's failure to instruct the jury that appellant had to actually know that he was required to register the addition of a second address requires reversal of the judgment.

### STATEMENT OF THE CASE

On July 11, 2000, appellant was charged by information with four counts of willfully violating the notification provisions of the state sex offender registration law (Pen. Code, § 290, subds. (a)(1), (f)).[1] It was further alleged that appellant had two or more prior felony convictions (§ 1203, subd. (e)(4)), and four qualifying prior "strike" convictions (§ 1170.12).

After appellant filed a motion to set aside the information as to all four counts and respondent conceded that the evidence was insufficient to support three of the counts, the trial court dismissed three of the four counts.[2] The court also granted respondent's motion to strike three of the four "strike" convictions.

On September 15, 2000, at the conclusion of appellant's jury trial, the jury found him guilty, as charged, of count 1. On that same date, following a court trial on the remaining allegations, the trial court found the prior conviction and strike allegations to be true.

On November 1, 2000, the trial court sentenced appellant to four years in state prison. This timely appeal followed.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The remaining count alleged that appellant "did change his residence address and fail to inform, in writing within 10 days, the law enforcement agency or agencies with whom he/she last registered of the new address, in violation of Penal Code section 290(f), a felony."

## STATEMENT OF FACTS

*Prosecution case*

The parties stipulated that appellant had previously been convicted of unspecified sex offenses, and was therefore required to register as a sex offender pursuant to section 290.

On April 29, 1993, prior to appellant's release from prison, California Department of Corrections counselor Joseph Case reviewed with him a document entitled "Notice of Registration Requirement." The notice stated: "I have been notified of my duty to register as a convicted sex offender pursuant to Section 290 of the California Penal Code. I understand that: [¶] My responsibility to register as a sex offender is a lifetime requirement. [¶] I must register within *14 days* of coming into any city, county, or city and county in which I am domiciled with the law enforcement agency having jurisdiction over my place of residence. [¶] I must upon changing my residence, inform in writing within *10 days* the law enforcement agency with which I last registered." (Italics in original.) Appellant signed the document.[3]

On August 10, 1993, after appellant was released on parole, parole agent Richard Joshua reviewed with appellant a document entitled "Notice of Registration Requirement." That notice contained language identical to that used in the notice Case reviewed with appellant. Appellant signed the document, and informed Joshua that his address was 220 Golden Gate Avenue (in San Francisco).[4]

On August 17, 1995, appellant registered as a sex offender with the Daly City Police Department, and informed the department that his residence address was 566 Clarinada Avenue, apartment 11, in Daly City. There was no indication in the department's records that appellant informed Daly City police of his whereabouts after he registered in August 1995.

In 1997, the Daly City Police Department conducted a "290 sweep" of its registered sex offenders to verify that their residence information was still accurate. On April 21, 1997, Detective Gary Smith went to the Clarinada Avenue address and spoke to Josette Phillips, who said that she had lived there since March 1994 and that appellant had not lived there since that date.

---

[3]Although Case had no specific recollection of appellant, he testified to his practice of reviewing the notice with prisoners, and confirmed his signature on the bottom of the notice form reviewed with appellant before his release.

[4]Joshua did not specifically recall filling out the form with appellant, but he recognized his writing on the form, and testified as to his general practice of reviewing the form with parolees.

On June 16, 1997, the Daly City Police Department informed the California Department of Justice that appellant's residence address was "unknown."

On December 22, 1997, San Francisco Police Officer Ronald Banta arrested appellant in San Francisco for an unspecified offense. Appellant told Banta that he "lived at some hotels downtown." Appellant further said that, at that time, he was staying at a hotel on Polk Street, which Banta later learned was called either the Mayflower or Mayfair.

When appellant was arrested, he was with some friends who asked Banta if they could retrieve a duffel bag full of clothing belonging to them from appellant's hotel room. Appellant gave Officer Joseph Marte permission to enter his room and provided him with the room key. Appellant did not tell Marte that this was someone else's room.[5]

Marte went to the Mayfair Hotel on Polk Street, where he spoke to the desk clerk, Gilbert Garcia. According to Marte, Garcia informed him that appellant had been "living out of that room, that particular room, for the past four months." Garcia did not tell Marte that anyone else lived in the room. Garcia provided Marte with the room registration card; at trial, Marte did not recall seeing appellant's name on the card. Marte unlocked the door to the room using the key appellant had given him. The room was fairly small, with a single bed and a TV and VCR, which were on.[6] There were men's clothes on the bed, magazines on the bed and floor, and VCR tapes on top of the VCR. There was no sign of a female living in the room. There were no clothes in the room other than those Marte was there to retrieve, which were in a duffel bag; the bag was on a dresser drawer, which was on the bed. Marte did not recall if he saw any other personal items in the room that might have belonged to appellant.

Garcia testified that he remembered that appellant had a girlfriend who was living in the room in question, that appellant visited her there a couple of times a week, and that he occasionally spent the night there. Garcia was not collecting rent, so he did not know if appellant was a resident. Garcia also testified that his memory had been fresher when he spoke to the police, and that he had not lied to the police. Although he was not sure, Garcia believed appellant's name was on the registration card. The hotel's policy was that only residents had room keys, but there was a practice of residents

---

[5]According to Banta, many residential hotels in San Francisco have rules prohibiting residents from staying for more than 29 consecutive days. Therefore, residents will occasionally move out for a day or two each month, and then move back in.

[6]Marte had previously been in other rooms in the same hotel, and had never seen them equipped with VCR's. It therefore appeared to him that the VCR had been brought to the room.

throwing their keys out the windows to let in their guests. Appellant might have let himself into the hotel with a key once or twice, but he usually had to be buzzed in.

On March 31, 1998, appellant changed the residence address listed on his California ID card from an unspecified address in San Francisco, which had been on his ID card since 1993, to the Clarinada Avenue address.

On May 13, 1999, San Francisco Police Officer James Miller arrested appellant in San Francisco for interfering with a police investigation, after which he learned that appellant was a sex offender required to register under section 290. After appellant waived his *Miranda*[7] rights, he told Miller that he was living at the Clarinada Avenue address and the Mission Rock homeless shelter. He said that he stayed at 566 Clarinada "now and then"; when he was not staying there, he was at the shelter. Appellant said he had last stayed at the Clarinada Avenue address a couple days before the interview with Miller.

On November 30, 1999, Daly City Police Detectives Gregg Oglesby and David Boffei went to the Clarinada Avenue address and spoke to Josette Phillips. Detective Boffei testified that Phillips told them that appellant had not lived there for about the past year. Oglesby recalled Phillips saying that appellant had lived at the address in the past, but that he had moved out one or two years ago; she did not know where he was currently living. Oglesby testified that during the course of his investigation, he received information that appellant was staying at the Baldwin Hotel, a residential hotel for transients.

Josette Phillips testified that appellant is her ex-boyfriend. She moved to 566 Clarinada in 1994 and appellant moved in about six months later. Appellant lived there for maybe two or three years, although he would "come and go," leaving for months at a time. Although he moved out in about 1998, appellant left some of his things at Phillips's apartment, and stayed there occasionally, perhaps once a month until she moved out in April 1999.

*Defense case*

San Mateo Police Sergeant Mike Moran interviewed Phillips by telephone on May 14, 1999. Phillips told him that appellant was staying with her "all the time." After Moran told her that appellant had said he did not stay with

---

[7]*Miranda v. Arizona* (1969) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

her all the time, Phillips said appellant had stayed there the previous Monday night and that he had stayed there two to three weeks prior to that. When asked how often appellant stayed at the Clarinada Avenue address, Phillips said he was there one to three nights at a time. Phillips also acknowledged that she was being investigated by child protective services. She told Moran initially that her children stayed with her all the time; she then said they would stay with somebody else when appellant was staying with her.

DISCUSSION

I.

■ Appellant contends there was not substantial evidence that he acquired a new residence address either in addition to or after leaving the Clarinada Avenue address. ■ " ' "When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." [Citations.]' [Citations.]" (*People v. Butler* (2000) 85 Cal.App.4th 745, 752 [102 Cal.Rptr.2d 269].)

■ Appellant was charged with failing to inform the relevant law enforcement agencies, between December 1, 1997, and January 13, 2000, that he had changed his residence address. He was charged, and convicted, pursuant to a former version of section 290, which provided in relevant part: "If any person who is required to register pursuant to this section changes his or her . . . residence address, the person shall inform, in writing within five working days, the law enforcement agency or agencies with whom he or she last registered of the new . . . address. . . ." (§ 290, former subd. (f), as amended by Stats. 1997, ch. 821, § 3.) Section 290 further provided: "Every person described in paragraph (2) [including sex offenders such as appellant], for the rest of his or her life while residing in California, shall be required to register with the chief of police of the city in which he or she is domiciled . . . within five working days of coming into any city, county, or city and county in which he or she temporarily resides or is domiciled for that length of time." (§ 290, former subd. (a)(1).)[8]

The term "residence" was defined for the jury, based on the definition in *People v. Horn* (1998) 68 Cal.App.4th 408, 414 [80 Cal.Rptr.2d 310], as " 'a

---

[8]Appellant notes that, since 1999, section 290 has provided that a sex offender must register with the police department "of the city in which he or she is residing, *or if he or she has no residence, is located* . . . ." (§ 290, subd. (a)(1)(A), italics added.) Here, the prosecutor indicated that appellant was not being prosecuted pursuant to this later version of section 290.

temporary or permanent dwelling place, which one keeps and to which one intends to return, as opposed to a place where one rests or shelters during a trip or a transient visit. [¶] Depending on the circumstances, one may have a single place of residence or more than one place of residence or no residence.' " According to appellant, there was not substantial evidence that he acquired another residence address in addition to or after leaving 566 Clarinada. Instead, appellant asserts that the evidence shows that he was a transient, and merely stayed at various locations for a night at a time without the intent to return.

We agree with respondent that the evidence shows that appellant acquired one or more new residence addresses without informing law enforcement.[9] Under former section 290, subdivision (f), appellant was required to notify the Daly City Police Department within five working days of changing his residence address. (See *People v. Vigil, supra,* 94 Cal.App.4th at pp. 499-500.) There plainly was sufficient evidence that appellant temporarily resided at the Mayfair Hotel in 1997 and the Mission Rock homeless shelter in 1999, for a period of longer than five days.

San Francisco Police Officer Ronald Banta testified that when he arrested appellant in December 1997, appellant told Banta that he was living at some hotels downtown and that, at that time, he was staying at a hotel on Polk Street (the Mayfair), and that appellant had a key to a room there. San Francisco Police Officer Joseph Marte testified that Gilbert Garcia, the desk clerk at the Mayfair Hotel, told him in December 1997 that appellant had been "living out of that room . . . for the past four months." Although Garcia testified somewhat differently at trial, he acknowledged that his memory was fresher when he spoke to Marte in 1997 and that he did not lie to police. He also testified that because he did not collect rent, he did not know if appellant was a resident. In addition, San Francisco Police Officer

---

[9]Respondent also argues that, even had appellant not acquired a new residence address, his leaving 566 Clarinada constituted a "change" of residence address under former subdivision (f) of section 290, such that appellant was required to notify Daly City police of that change, regardless of whether he also acquired a new address. (Cf. *People v. Vigil* (2001) 94 Cal.App.4th 485, 500-501 [114 Cal.Rptr.2d 331] [given that primary definition of the verb "change" is "to make different in some particular," elimination of one of two registered residence addresses makes a person's residence address "different" for purposes of registration requirement].) Appellant was charged in the information, however, with changing his residence address and failing to inform law enforcement "of the new address . . . ." Moreover, the evidence at trial focused on whether he had acquired one or more new residence addresses, and we have concluded that there is substantial evidence that he did. Consequently, it would be improper now to find that appellant could have been charged and tried under respondent's alternative theory. We also observe that respondent's alternative theory would have the same due process problems with respect to appellant's actual knowledge of the registration statute's requirements as does the addition of a second address. (See pt. II., *post.*)

James Miller testified that, upon appellant's arrest in May 1999, appellant told Miller that he was living at the Clarinada Avenue address *and* the Mission Rock homeless shelter.

Appellant disputes this testimony, arguing that the evidence shows more that he "bounced around" rather than lived, even temporarily, at either the Mayfair Hotel or the Mission Rock homeless shelter. While acknowledging evidence to the contrary, he attempts to highlight evidence casting doubt on the fact that he had any residence other than the Clarinada Avenue address. There is substantial evidence that appellant acquired one or more new residence addresses either instead of or in addition to the Clarinada Avenue address, and we must decline appellant's request that we reweigh the evidence presented at trial. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

II.

Appellant contends the trial court erred by failing to instruct the jury regarding the knowledge element of the charged offense and by instructing the jury that there was no requirement that appellant intended to violate the law. Respondent agrees that instructional error occurred, but submits that the error was harmless beyond a reasonable doubt.

Subdivision (g)(2) of section 290 provides that "any person who is required to register under this section based on a felony conviction . . . who *willfully* violates any requirement of this section . . . is guilty of a felony . . . ." (Italics added.) The trial court instructed the jury in this case as to the element of "willfulness" as follows: "In order to prove this crime, each of the following elements must be proved: . . . [¶] No. 4. The defendant willfully failed to inform in writing within five working days the law enforcement agency with which he last registered, the Daly City Police Department, of any new or additional address." The jury was also instructed, pursuant to CALJIC No. 1.20, that "[t]he word 'willfully' . . . means with a purpose or willingness to commit the act or make the omission in question" and "does not require any intent to violate the law . . . ." The jury was further instructed, pursuant to CALJIC No. 3.30, that violation of section 290 is a general intent crime and that "[g]eneral intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

Recently, in *People v. Garcia* (2001) 25 Cal.4th 744, 748 [107 Cal.Rptr.2d 355, 23 P.3d 590], the California Supreme Court held that a defendant

cannot be convicted of willfully violating the notification provisions of section 290 absent a showing that he or she actually knew of the registration requirement. The court concluded that the trial court had erred in giving a "willfulness" instruction (CALJIC No. 1.20) that was incomplete in that it failed to clearly require actual knowledge of the registration requirement. (*Garcia,* at pp. 753-754.) The court further found that the trial court had erred in giving an "ignorance of the law is no excuse" instruction (CALJIC No. 4.36), which would allow the jury to convict the defendant of failing to register even if he were unaware of his obligation to do so. (*Garcia,* at p. 754.)

The Supreme Court concluded, however, that these errors were harmless beyond a reasonable doubt because, first, the prosecution had presented "strong evidence" that the defendant actually knew of the registration requirements. Second, under the instructions given, the jury expressly found that the defendant had read and signed a notice of the registration requirement, thereby discrediting the defendant's testimony that he signed but did not read the notice, which was the sole evidence supporting his claim that he was not aware of the duty to register. (*People v. Garcia, supra,* 25 Cal.4th at p. 755.)

The trial court in this case gave the same willfulness instruction found inadequate in *Garcia.* (See CALJIC No. 1.20.) Furthermore, like the "ignorance of the law is no excuse" instruction (CALJIC No. 4.36) given in *Garcia,* the general intent instruction given here (CALJIC No. 3.30) "on its face would allow the jury to convict [appellant] of failing to register even if he were unaware of his obligation to do so." (*People v. Garcia, supra,* 25 Cal.4th at p. 754.) We therefore find that the instructions given in this case also were erroneous in that they failed to clearly state that a conviction required actual knowledge of the duty to register. (*Ibid.*) We also find, however, that, unlike in *Garcia,* the instructional errors in the present case were *not* harmless beyond a reasonable doubt.

Both parties agree there was substantial evidence that appellant acquired one or more additional addresses during the relevant time period without having abandoned the Clarinada Avenue address. As respondent observes: "[T]here was sufficient evidence from which the jury reasonably could have found that the prosecution had failed to prove beyond a reasonable doubt that appellant had ever fully abandoned his residence at the Clarinada Avenue apartment during the relevant period, but that the prosecution had proved beyond a reasonable doubt that appellant had instead added a residence or residences at the Mayfair Hotel and/or the Mission Rock Homeless Shelter, so that the jury was required to determine whether appellant had

actual knowledge of the duty to report the addition of the other residence or residences."

During the time period applicable to this case, section 290 did not address the issue of multiple residences.[10] Thus, neither the statute itself nor the documents explaining the registration requirement, which appellant signed upon his release from prison, provided appellant with "clear notice" of what he had to do to comply with the reporting requirements. (See *People v. Franklin* (1999) 20 Cal.4th 249, 253 [84 Cal.Rptr.2d 241, 975 P.2d 30] ["registration statutes, . . . to assure effective compliance, must give *clear notice* to all registrants of their responsibilities"; cf. *People v. Garcia, supra,* 25 Cal.4th at p. 752 [jury may infer from proof of notice that defendant had actual knowledge of registration requirement].)

In addition, the trial court's instructions not only did not tell the jury about the necessity that appellant *purposefully* violate the registration statute, but the court compounded this error by instructing the jury that "[d]epending on the circumstances, one may have a single place of residence or more than one place of residence or no residence. One who has one place of residence and then adds a second place of residence has changed his residence within the meaning of this law and has a duty to report this change resulting in an additional residence even though he may also maintain a residence at the old place."[11] Thus, the instructions violated due process by imposing criminal liability for failing to register without any need for the jury to find that appellant actually knew the law required him to register multiple residences. (See *People v. Garcia, supra,* 25 Cal.4th at p. 752 ["Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed . . . . Accordingly, a violation of section 290 requires actual knowledge of the duty to register."]; see also *Lambert v. California* (1957) 355 U.S. 225, 229-230 [78 S.Ct. 240, 243, 2 L.Ed.2d 228] ["Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process."].)

Here, unlike in *Garcia,* the court gave no instructions that required the jury to find that appellant actually knew that staying at a transient hotel or

---

[10]In 1999, the statute was amended to expressly require registration of multiple residences. Subdivision (a)(1)(B) of section 290 now provides: "If the person who is registering has more than one residence address or location at which he or she regularly resides or is located, he or she shall register in accordance with subparagraph (A) in each of the jurisdictions in which he or she regularly resides or is located. If all of the addresses or locations are within the same jurisdiction, the person shall provide the registering authority with all of the addresses or locations where he or she regularly resides or is located."

[11]The language of this instruction came from *People v. Horn, supra,* 68 Cal.App.4th at pages 414-415. In *Horn,* the issue was whether section 290 required registration of a second residence. (*Horn,* at p. 415.) Here, appellant raises the distinct question of whether he had the requisite actual knowledge that adding a second residence constituted a "change" of residence for purposes of section 290's registration requirement.

homeless shelter, even on a temporary basis, while still maintaining his residence at the Clarinada Avenue address, required notification of law enforcement. On the contrary, the court's special instruction informing the jury that a person has "changed" his residence pursuant to section 290 by adding a second residence address, in conjunction with the other instructions in the case, entirely removed from the jury the issue whether appellant had knowledge that acquiring an additional residence required an additional registration.

Furthermore, although there was evidence at trial that appellant had actual knowledge of the general duty to register a change of address with the appropriate law enforcement agency, the prosecution presented absolutely no evidence showing that appellant also knew that acquiring a second residence address constituted a change in residence that required registration of the new address.[12] This lack of evidence is especially problematic in light of the fact that appellant's additional residences were a transient hotel and/or a homeless shelter, places which necessarily tend to function as temporary lodging. Thus, the nature of appellant's additional residences makes the inference that he knew of the duty to register these addresses even more tenuous than it otherwise would be.[13]

---

[12]A recent analogous case is *People v. Davis* (2002) 102 Cal.App.4th 377, 385 [125 Cal.Rptr.2d 519], in which the Second District Court of Appeal reversed the defendant's conviction for violating section 290, subdivision (f)(1), after the trial court failed to instruct the jury that a willful failure to advise the last registering agency of a move outside the jurisdiction required a finding that the defendant had actual knowledge of this reporting requirement. The evidence at trial "showed that Davis was advised of the duty to register when he moved *into* a city, but was not advised of the duty to report when he moved *out* of a city except to the extent of providing an annual update of his registration. [¶] There being no other evidence regarding Davis's knowledge of the reporting requirements of section 290, subdivision (f)(1), the trial court's failure to instruct on actual knowledge prejudiced Davis." (*Davis*, at p. 385.)

[13]Respondent cites *People v. Vigil, supra,* 94 Cal.App.4th 485, for the proposition that a reasonable person in appellant's position would have understood his acquisition of one or more additional addresses to mean that he had "changed" his residence address for purposes of section 290. In *Vigil,* the appellate court found no error in the trial court's failure to instruct sua sponte on mistake of fact because, first, there was no evidence that the defendant did not know that he lived at the second address in light of the fact that he had provided that address to his employer, the Department of Motor Vehicles, and used it for other purposes. (*Vigil,* at p. 503.) Second, it would have been unreasonable for the defendant to conclude from language on the registration card previously issued to him that his lifetime registration obligation would not apply if he had multiple addresses. (*Id.* at p. 504.) Finally, the "defendant's statements at the time of his arrest rebutted any inference that he was operating under such a mistake of fact since he attributed his failure to notify law enforcement to his alleged belief that his lifetime registration had miraculously expired." (*Ibid.*)

The circumstances in *Vigil* are distinguishable from the present case. Here, there is no claim that appellant was misled by language on a registration card. Also, unlike in this case, the defendant in *Vigil* could not reasonably claim that he did not know he was living at the

Because, under the instructions and evidence presented at trial, the jury could not have found that appellant actually knew of the requirement of registering multiple residences, we cannot conclude beyond a reasonable doubt that the same jury, properly instructed on the knowledge requirement, would have found that appellant was aware of his duty to register multiple addresses. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) Accordingly, due process requires reversal of appellant's conviction. (See *People v. Garcia, supra*, 25 Cal.4th at p. 754.)

## DISPOSITION

The judgment is reversed.

Haerle, J., and Ruvolo, J., concurred.

---

additional address, given that he had provided that address to his employers, the Department of Motor Vehicles, and others. Moreover, appellant never claimed, as did the defendant in *Vigil*, that he was no longer required to register under section 290. Rather, we have concluded that the trial court's instructions together with the evidence adduced at trial make it highly unlikely that a properly instructed jury would have found that appellant actually knew of the requirement to register his additional addresses. Hence, we find *Vigil* unpersuasive in the circumstances of this case.