[No. A099237. First Dist., Div. One. Mar. 4, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND ANNIN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Under California Rules of Court, rules 976(b) and 976.1, only the Facts section, Parts I and II of the Analysis section, and the Conclusion are certified for publication.

592

COUNSEL

Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, and Christopher J. Wei, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**STEIN, J.**—Raymond Annin (appellant) appeals his conviction for violating Penal Code section 290, subdivision (f)(1).[1] The court also found true allegations that he had four prior convictions qualifying as strikes under the "Three Strikes" law, and found true an enhancement pursuant to section 667.5. The court denied his motion to strike one or more of the strike priors, and sentenced him to a term of 25 years to life, plus one year for the enhancement.

Appellant raises numerous issues on appeal, including challenging the sufficiency of the evidence, several claims of instructional error, ineffective assistance of counsel, and due process and equal protection challenges to section 290. He also contends that his sentence constitutes cruel and unusual punishment under the state and federal Constitutions. We shall affirm the judgment.

## FACTS

On November 8, 1998, appellant was released on parole. He registered as a sex offender in Redwood City on November 10, 1998, and last registered on August 26, 1999. During that time period, he filed 10 forms in Redwood City to report a change of address, or that he was within the jurisdiction as a transient, meaning that he had no address. On three occasions, the form he filed indicated that he was a transient.

In March of 1999, his case was transferred to Steve McCoin, a parole agent for the California Department of Corrections in Redwood City. McCoin met with appellant every month to review his obligations as a parolee, including the sex registration requirements pursuant to section 290. McCoin informed appellant that the failure to comply with registration requirements would constitute a parole violation.

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

On August 25, 1999, McCoin met with appellant at his office. Appellant stated that he was about to become homeless, and they discussed the possibility of appellant obtaining another voucher for housing at the Garden Motel in Redwood City. McCoin also informed appellant that he would have to "re-register"[2] to notify of his new address or location with the Redwood City Police Department if he changed his address again. Appellant indicated that he understood this obligation.

On August 31, 1999, McCoin made a routine unannounced visit on appellant at the Garden Motel, where they again discussed the fact that appellant was soon going to be homeless. In response to McCoin's directions, appellant came to his office on September 1, 1999, and reported that he was now homeless. McCoin told appellant that he could not provide him with a housing voucher for that week, and that he should meet with McCoin again on September 8, 1999, to discuss the possibility of a voucher or loan. He also reminded appellant that he would have to notify the Redwood City police that he was now homeless. Appellant did not report to the September 8, 1999 appointment, and a week later McCoin requested that a warrant issue for appellant as a parolee-at-large.

The manager of the Garden Motel testified that the records showed that appellant stayed in the Garden Motel from July 14 through July 20, 1999, and again from August 25 to August 31, 1999. Both times he paid with a voucher. The records also showed that he did not stay at the motel after August 31, 1999.

A Redwood City Police Department detective testified that he was the custodian of the sex-offender records. The records showed that appellant had registered, or notified of a change of address 10 times. In December of 1998, appellant registered at an apartment building on Linden, and judging from the date of his next notification of change of address, he continued to live there until July 7, 1999. On three occasions appellant notified the department that he had changed his address and was "transient." One of these occasions was on August 20, 1999. On August 26, 1999, appellant filed his last notification of a change of address, which he gave as the Garden Motel, room 8.

---

[2] Most of the witnesses referred to the requirement pursuant to section 290, subdivision (f)(1) that the registrant notify the law enforcement agency last registered with of a change of address or location, as "registration" or "re-registration." The duty to notify of a change in address or location is indeed one of the obligations of a registered sex offender under section 290. However, for the sake of clarity, we shall refer to this obligation as the "duty to notify."

On August 26, 1999, when appellant filed this last registration form notifying the police of his change of address, appellant also signed a statement acknowledging that he had been notified of his duty to register as a convicted sex offender under section 290. He placed his initials in a box acknowledging that he read the admonition: "If I move out of California, I am required to register in any state in which I am located or reside, within 10 days, with the law enforcement agency having jurisdiction over my residence or location." He also specifically acknowledged having read the admonition: "When changing my residence address, either within California or out of state, I must inform the registering agency with which I last registered, of the new address . . . as a sex offender within five working days."

In October 1999, Officer Garcia, who had processed appellant's August 26 registration form, noticed that appellant had failed to register in October, within five days of his birthday. Appellant's parole agent informed Garcia that appellant was also in violation of his parole, and that his whereabouts were unknown. Garcia checked the state registration system and discovered that appellant had not registered anywhere else. Garcia also identified a fingerprint card dated November 10, 1998, signed by appellant, acknowledging the following: "I understand my requirement as stated in the appropriate code sections. [¶] When registering pursuant to 290 PC, my requirement to register is for life and I must, within five working days, register with the agency having jurisdiction over my residence address. Notify the last registering agency when I leave their jurisdiction and report any name change to the registering agency. [¶] Annually, within five working days of my birthday, I must update my registration address, name, and vehicle information. [¶] . . . [¶] If I am designated either a sexually violent predator, or transient, or homeless, I must update my registration at least once every 90 days, and annually within five working days of my birthday."

Garcia also identified a notice of registration requirement dated May 22, 1998, signed by appellant, and containing his thumbprint. Garcia testified that this card is explained to prisoners when they are released from custody. It summarized the requirements of section 290 and listed registration dates for appellant, with more detailed summaries of the registration information for each date.

In January 2001, appellant's parole agent notified Garcia that appellant had been arrested in Portland, Oregon. Officer Garcia and a Detective Dolezal went to interview appellant at San Quentin. Appellant admitted that he signed the August 26, 1999 registration form, and initialed all the registration requirements on the form. When Garcia asked appellant why he left

California, appellant stated that he was tired of California, and used his Social Security check to buy a bus ticket to Portland, leaving around September 7 or 8, 1999. He stayed there for 14 months. When asked why he did not register before he left, appellant stated that he knew if he told the police department that he was moving to Oregon, they would contact his parole agent to "verify that [it] was okay . . . and he knew it wasn't okay, and he would be violated [*sic*] and arrested." Appellant told Garcia he thought about informing the Redwood City Police Department, but knew if he did so, he would be arrested. A recording of the interview was played for the jury. In the interview, when Garcia asked appellant whether "[he was] aware that by leaving, that "[he was] . . . violating . . . the 290 requirement" appellant responded, "I knew that I was violating my parole[,] yes." Appellant also told Garcia, "[T]here's really no good reason why I didn't report and let you know. There's really . . . no excuse . . . . There's no excuse for what I did."

Appellant testified that when he was paroled into Redwood City in 1998, he understood the registration requirements that applied to him, and that there was "no mistake" in his mind "whatsoever." When he was first released he used a voucher to live at the Garden Motel. When the time ran out on the voucher, he lived on the street as a transient. He also shared an apartment on Linden for several months, but had to move because it became overcrowded, and he could not afford it. Every time he became homeless he would "go down and register" with the Redwood City Police Department. He was not qualified to stay in homeless shelters because of his record as a sex offender. When defense counsel asked, "[W]hat is it that [led] you to think that you had to leave without registering?" appellant explained that he "had no choice." He knew he would not have to live on the street in Portland because the cost of living was lower, and he had friends and family there. His parole officer had told him it would be impossible to serve his parole in Oregon. He therefore felt that he had to "just leave without notifying the police." Appellant acknowledged that he understood everything on the registration form he filed with the Redwood City Police Department in August of 1999, and that he "knew that by going to Oregon, [he] would be out of compliance with [his] registration," but "went anyway."[3] On cross-examination, appellant

---

[3] After the court denied appellant's request for instructions on the necessity defense, the apparent defense strategy, in light of the admissions appellant had made in his interview, was to present evidence of the circumstances that forced appellant to be homeless in Redwood City, and his belief that he had no choice but to fail to comply with subdivision (f)(1), so he could relocate to Oregon and stay with friends or family. That strategy was based on the possibility that his honest testimony would either lead to jury nullification or would influence the court to grant a motion to strike some or all of the alleged prior strike convictions. It was a reasonable strategy, especially in light of the severity of the penalty if sentenced as a third strike.

Appellant, by way of a separate petition for habeas corpus (*In re Annin,* deferred pending appeal, Dec. 17, 2003, A104846), contends, inter alia, that the adoption of this strategy, and

stated that once he got to Oregon he did not stay with family. Instead, he stayed with friends, "kids I went to school with," and stayed in Oregon for 14 months. When the district attorney reminded him that he had told Officer Dolezal that he stayed in motels, appellant explained that he did not want to involve his friends. He did stay in motels when he first arrived, and when he had money.[4]

## ANALYSIS

### I.

### Substantial Evidence of Section 290, Subdivision (f)(1) Violation

A. *Summary of Relevant Statutory Provisions*

In 1999, section 290, subdivision (a)(1)(A) (subdivision (a)(1)(A)) provided:

"Every person [who has a prior conviction for a specified offense], for the rest of his or her life while residing in, or, if he or she has no residence, while located within California, shall be required to register *with the chief of police of the city in which he or she is residing,* or if he or she has no residence, is located . . . *within five working days of coming into, or changing his or her residence or location within, any city* . . . in which he or she temporarily resides, or, if he or she has no residence, is located." (Italics added.)

Section 290, subdivision (f)(1) (subdivision (f)(1)) provided, in relevant part:

"If any person who is required to register pursuant to this section *changes his or her residence address or location,* whether within the jurisdiction in which he or she is currently registered *or to a new jurisdiction inside or outside the state,* the person shall inform, in writing within five working days, *the law enforcement agency or agencies with which he or she last registered of the new address or location.*" (Italics added.)

---

particularly the failure of defense counsel to advise him against testifying, constituted ineffective assistance of counsel. We shall deny the petition by separate order.

[4] The jury heard only a portion of appellant's taped interview with Garcia and Detective Dolezal. The prosecutor was referring to another portion of the interview, in which appellant had acknowledged that his parole placed restrictions on seeing his daughter, who was one of his victims, and that he did not see his family while in Oregon. Instead, he stated he stayed in "apartments . . . I mean motels, motels."

Subdivision (f)(1) also provided that the enforcement agency the registrant last registered with shall forward the information the registrant provides to the Department of Justice, which shall then promptly notify the law enforcement agency "having local jurisdiction of the new place of residence or location."

One of the purposes of the requirement in subdivision (f)(1) that the registrant notify the authority *last registered* with of a *change* in address, is to preclude a registrant who leaves one jurisdiction for another from attempting to disappear from the registration rolls by not complying with the duty under subdivision (a)(1)(A) to register in the new jurisdiction. This is accomplished by requiring the information the registrant provides to the authority *last registered with* to be forwarded to the Department of Justice, which in turn will provide it to the local law enforcement agency having jurisdiction over the new place of residence. (See *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101] [§ 290's purpose of ensuring that offender's whereabouts are known to police "depends upon timely change-of-address notification. Without it law enforcement efforts will be frustrated and the statutory purpose thwarted"].) Also, because no single nationwide registration system has been established, compliance with subdivision (f)(1) ensures that, if a California registrant leaves the state, the local law enforcement agency in the state where the registrant relocates is at least alerted to the presence of a former sex offender within the jurisdiction, and has the opportunity to enforce that state's registration law, if it has one.

B. *Evidence of a Subdivision (f)(1) Violation*

The amended information alleged, and the jury found, that between September 5, 1999, and January 11, 2001, appellant willfully violated subdivision (f)(1).

There was overwhelming evidence that appellant moved out of the Garden Motel, his last registered address in California, and moved to Portland, Oregon. There was also substantial evidence that appellant did not notify the Redwood City Police Department that the Garden Motel was no longer the address where he was staying. Nor did he provide any other information concerning his whereabouts for 14 months.

The testimony of several witnesses, including appellant's own, established that he last registered with the Redwood City Police Department on August 26, 1999, and at that time he gave his address as the Garden Motel. The testimony of Patel, the hotel manager, established that appellant did not live

at that address after August 31, 1999. The testimony of Officer Garcia and McCoin established that appellant did not thereafter provide any notification to the Redwood City police that he was no longer living at the Garden Motel, or any other information regarding his whereabouts. He was considered a parolee at large until he was arrested in Oregon, 14 months later. Appellant testified that he moved out of the Garden Motel and, on or about September 7, left the jurisdiction of Redwood City and moved to Portland, Oregon where, for the next 14 months, he stayed with friends or in motels.

There was also substantial evidence that appellant "willfully" failed to notify the Redwood City police that he could no longer be found at his registered address at the Garden Motel, and had moved to Oregon.[5] Appellant testified that he "knew that by going to Oregon, [he] would be out of compliance with [his] registration." He told Officer Garcia that he left anyway, because he knew that if he gave the Redwood City Police Department this information they would notify his parole officer, and he would be arrested for a parole violation.

Appellant nevertheless contends that the evidence was insufficient to support a finding that he violated subdivision (f)(1). He construes subdivision (f)(1) to impose no duty to notify the Redwood City Police Department that he *changed* his "residence address or location," unless and until he acquired a new one. From this premise, he argues that there was no substantial evidence that he had a new address or location, and in the absence of evidence that he had a new address or location, he had no duty under subdivision (f)(1) to notify the Redwood City Police Department that he had moved from his last registered address to Oregon. He concludes that the five-day grace period for notification of a change of address or location was never even triggered, and thus, no violation occurred.

Even if we accept appellant's construction of subdivision (f)(1), his contention fails because there was substantial evidence that he had a new "address" in Oregon. Appellant testified that when he was in Oregon he stayed with friends, or in motels, for the duration of his 14-month stay. Appellant argues that this is insufficient evidence that he had an "address," because there was no evidence that any of the addresses where he stayed were places to which he intended "to return, as opposed to a place where one

---

[5] In section III., *post*, we discuss the evidence of a "willful" violation more fully, in the context of appellant's contention that the failure of the court to instruct on the requirement that he have actual knowledge, as required by *People v. Garcia* (2001) 25 Cal.4th 744, 754 [107 Cal.Rptr.2d 355, 23 P.3d 590], resulted in prejudicial error.

rests or shelters during a trip or transient visit."[6] He suggests that because he did not specify the length of time he stayed at each place, or identify any *particular* address or addresses where he stayed in Oregon, he might have stayed no more than a day at a time with any one friend or at any one motel. He concludes that there was no substantial evidence that he had a residence address, because wherever he stayed during his 14-month absence, these were only places where he was passing through on a "transient visit," staying no more than a day at a time, as opposed to places to which he "intend[ed] to return."

█ It is axiomatic that substantial evidence includes all reasonable inferences that may be drawn from the evidence, and that in reviewing the sufficiency of the evidence this court must draw all reasonable inferences in support to the judgment, "presume . . . the existence of every fact the trier could reasonably deduce from the evidence," and may not reweigh the evidence. (*People v. Lewis* (1990) 50 Cal.3d 262, 277 [266 Cal.Rptr. 834, 786 P.2d 892]; *People v. Edgar* (2002) 104 Cal.App.4th 210, 218 [127 Cal.Rptr.2d 662].) Appellant's lack of specificity about precisely where he stayed, and for how long, simply does not preclude the *reasonable inference* that, with respect to one or more addresses, his stay was more than merely a "trip" or a "transient visit." There was substantial evidence that he was not living on the streets, and wherever he stayed, it was a place, or places, with an address. Appellant testified that he moved to Portland, Oregon, so that he could stay with friends or family, and *avoid* living on the streets, as he was often forced to do in Redwood City. Once he arrived, he achieved his goal of avoiding the life of a transient by staying either with friends or in motels. The evidence also supported the reasonable inference that one or more of these addresses was a place to which appellant intended to return, as opposed to a "transient visit," and that he stayed at one or more of these places for more than a day at a time. According to his testimony he stayed either with friends or in motels for the next *14 months,* and he inferably intended to continue to do so if he had not been arrested.[7] Thus, although he was vague and evasive about

---

[6] The jury was given an instruction that defined "residence" as "a temporary or permanent dwelling place, which one keeps and to which one intends to return, as opposed to a place where one rests or shelters during a trip, or a transient visit." If anything, this definition, derived from *People v. Horn* (1998) 68 CalApp.4th 408, 414 [80 Cal.Rptr.2d 310] (*Horn*), was arguably slightly more restrictive than the statute requires because it approximates the more exclusive concept of "domicile."

[7] Appellant also suggests, in a letter brief, that Division Three of this court, in the recent decision, *People v. North* (2003) 112 Cal.App.4th 621 [5 Cal.Rptr.3d 337], construes "residence address" to mean a place where the registrant stays for at least five days. The discussion in *North* regarding the definition of "residence address" is dicta because the *North* court, in an attempt to define "location," considered, but ultimately rejected, the possibility of defining "location" as a residence equivalent. (*Id.* at pp. 631–632.) Assuming arguendo that "residence address" is defined, as appellant suggests, for purposes of the sufficiency of the evidence, for

where precisely he stayed, and for how long, presumably out of concern for those who sheltered him, the jury could reasonably infer that he regularly returned to one or more address, either with friends or in motels, during his 14-month stay in Oregon, and would have continued to do so if he had not been arrested.[8] Finally, because "residence address" includes multiple addresses (see *Horn, supra,* 68 Cal.App.4th at pp. 415–418), even if he stayed with more than one friend at different addresses, or one or more motels, during that 14-month period, it was still a reasonable inference that he had at least one or more residence addresses, yet failed to notify Redwood City authorities of any of them.

■ We conclude that there was substantial evidence that appellant had one or more new addresses in Oregon, and violated his duty under subdivision (f)(1) by failing to notify the Redwood City Police Department that he had changed his address. We therefore need not reach appellant's contention that there also was no substantial evidence that he had a "location" in Oregon.

Because it underlies many of his other claims of error, we next address appellant's premise that the duty to notify of a *change* of address as defined by subdivision (f)(1) does not arise, unless and until a new address is acquired. Simply put, under his construction, the registrant is not required to report "that he has *changed* his residence (or location), but only the *new address or location.* If a person changes his residence (or location) and does not yet have a new address or location, then he has no duty to report anything." Appellant asserts this is the only reasonable construction of subdivision (f)(1) because notification of a change cannot be made without provision of a new address or location. Under appellant's construction, a person subject to the registration requirement of section 290 would have no duty, when leaving his last registered address, to inform the law enforcement authority with whom he last registered that he can no longer be found there, or to provide any information at all concerning his whereabouts, as long as he continues to change, on a daily basis, the place where he or she stays. If we were to accept appellant's construction, then the time period during which

the same reason that it is inferable that appellant's stay, at one or more of these places, was for more than a day, the evidence also permits the inference that over the 14-month period, he stayed for at least five days at one or more addresses.

[8] Appellant did not claim not to have known where he was going when he left the Garden Motel, or that while in Oregon he was homeless, or that he moved so often that he did not know what address to provide. Instead, he admitted in his interview with Dolezal and Garcia that he did not notify the police that he was moving to Oregon, because he knew that to do so violated his parole.

law enforcement agencies would have incorrect, outdated information concerning the offender's whereabouts could be extended from five days to a period of indefinite duration, controlled entirely by the offender, allowing the offender simply to disappear, as appellant did here, for lengthy periods.

Appellant's suggested construction of subdivision (f)(1) would defeat the clear legislative purpose of section 290. In *Wright v. Superior Court, supra,* 15 Cal.4th 521, 529, the court observed that tracking the whereabouts of sex offenders can be difficult because " 'sex offenders often have a transitory lifestyle or deliberately attempt to keep their movements secret.' " The legislative " 'purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' [Citations] . . . Plainly, the Legislature perceives that sex offenders pose a 'continuing threat to society' *(United States v. Bailey* (1980) 444 U.S. 394, 413 [62 L.Ed.2d 575, 100 S.Ct. 624]), and require constant vigilance[9] . . . . [¶ Supplemental address change information helps law enforcement agencies keep track of sex offenders who move within the same city or county or are transient. In large cities such as Los Angeles or huge counties like San Bernardino, where offenders can easily relocate without reregistering, section 290(f)[(1)] seeks to prevent them from disappearing from the rolls. Ensuring offenders are 'readily available for police surveillance' [citation] *depends on timely change-of-address notification.* Without it law enforcement efforts will be frustrated and the statutory purpose thwarted." *(Wright v. Superior Court,* at p. 527, italics added.)

█ With this legislative objective in mind, the courts have interpreted a "change" of address to include the addition of another address (see *People v. Vigil* (2001) 94 Cal.App.4th 485, 497 [114 Cal.Rptr.2d 331]), and to include the duty to register multiple addresses (see *Horn, supra,* 68 Cal.App.4th at pp. 415–419) even before the amendments to section 290 made that duty explicit. (See § 290, subd. (a)(1)(B).) Viewed in light of the same objective, the duty to notify under subdivision (f)(1) must arise upon a *change* of address, and common sense dictates that whenever a person moves out of the last registered address he or she will either have a new address, or a new "location," of which to notify, within five days.[10] The statutory language presumes that a change normally entails acquiring a new address when

---

[9] Similar concerns about the risk of reoffending posed by certain sex offenders underlie the Sexually Violent Predator Act. (Welf. & Inst. Code, § 6600 et seq.)

[10] "[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." *(People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1].) The "rule of lenity" is inapplicable unless there are two conflicting yet equally reasonable interpretations of the same provision. *(Ibid.)* Unlike the issues of construction addressed in *People v. Franklin* (1999) 20 Cal.4th 249 [84 Cal.Rptr.2d 241, 975 P.2d 30], and *People v.*

leaving the old one, and therefore the offender should normally be able to notify authorities of a new address within the five-day period. Nevertheless, if the registrant "changes" the last registered address by moving out, and does not have a new address of which to provide notification, he or she may comply with subdivision (f)(1) by notifying of a new "location," meaning, in this context, simply a place where the registrant can be found who has no address. This construction ensures that if a registered offender moves, it will be no longer than five days before the registrant must inform the police of his whereabouts.[11] (See *People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276

---

*Smith* (2004) 32 Cal.4th 792 [10 Cal.Rptr.3d 290, 86 P.3d 348] (*Smith*) we do not find the language of subdivision (f)(1) to be ambiguous, or to fail to provide clear notice of the conduct required as applied to the facts of this case. The language of subdivision (f)(1) itself states that if the registrant "*changes*" his or her "residence address or location," the registrant shall provide notification "within five working days." By its terms, this subdivision provides that the duty to notify, and hence the five-day notification period, is triggered by a "change," which any reasonable registrant would understand must include *moving* from the last registered address. It also is unnecessary to adopt appellant's construction to avoid the "Catch-22" he posits of a registrant who leaves his last registered address and does not yet have a new address, because a registrant will always have either a new address, or at least a location, within five days of changing his residence address or location.

Appellant's construction is also unreasonable, and contrary to the legislative purpose and intent underlying subdivision (f)(1), because (1) the result of his construction would be that the time within which a registrant must comply with subdivision (f)(1) would depend entirely upon the registrant's movements after leaving the last registered address, of which only the registrant is aware; (2) the duration of the period between a change from the last registered address and notification would be entirely within the registrant's control; and (3) the registrant could evade the notification obligation altogether if the registrant adopts the life of a transient.

In any event, the hypothetical scenario of the dilemma faced by a registrant who leaves his last registered address, and cannot comply with subdivision (f)(1) because he becomes homeless and never thereafter acquires a residence address, and either does not have adequate notice of the meaning of a new "location" or lives such a transitory life that he or she never has a "location," is not presented by the facts of this case. Nor was there any evidence that appellant made any attempt to comply with the notification obligation in subdivision (f)(1), *at any time*, during the 19 months after he moved out of the Garden Motel.

For all the foregoing reasons, subdivision (f)(1) provides "clear notice" that upon a "change" of address or location, the registrant has an obligation to inform of a new address or location, and appellant never even attempted to provide any notice at all. Moreover, a violation of subdivision (f)(1) is a continuing offense (*Wright v. Superior Court, supra,* 15 Cal.4th 521, 527–528) and we have found that there was substantial evidence that, even under appellant's construction, at some point he had one or more new addresses in Oregon. Yet, he never provided notification of any of them.

[11] Appellant's reliance upon *People v. Franklin* (1999) 20 Cal.4th 249 [84 Cal.Rptr.2d 241, 975 P.2d 30] in support of his assertion that the duty to notify under subdivision (f)(1) does not arise until the registrant establishes him or herself at a new address, is misplaced. The court in *Franklin* addressed the very narrow, and different, question whether a registrant had a duty to notify California law enforcement authorities of his change of address when he moved from California to Texas *prior to the effective date of an amendment to section 290,* which now explicitly provides that the duty to notify of a change in address applies when a registrant moves to a new jurisdiction outside the state. (*Franklin, supra,* at pp. 251–252.) The defendant argued that because subdivision (a)(1) contained language describing the duty to register,

Cal.Rptr. 918, 802 P.2d 420] [statute should be construed based upon its plain language and in light of the legislative intent and in harmony with its other provision].)

We are aware of the hypothetical difficulties that may be posited in defining what is a "location," especially as applied to a transient registrant who has no address. (See *North, supra,* 112 Cal.App.4th 621.) Nevertheless, a registrant who moves from his last registered address will always have either an "address," or at least a "location," of which to notify the authorities within the five-day period. Despite the difficulties that may arise in defining "location" in some hypothetical factual contexts, here, if appellant did not have an address in Oregon, he might at least have notified the Redwood City Police Department that he was relocating from its jurisdiction to Portland, Oregon. Had he done so, the purpose of subdivision (f)(1) would have been served because local law enforcement in Portland would at least have been informed of the presence of a registered sex offender within its jurisdiction. Instead, he provided no information at all, not because he did not know what information to provide, but rather because he knew if he provided any information he would be found and arrested for violating his parole.

After this opinion was filed, but before it became final, our Supreme Court filed its decision in *Smith, supra,* 32 Cal.4th 792. Appellant asserts that we should grant rehearing because the decision in *Smith* supports his statutory construction of subdivision (f)(1), or at least requires that we apply the same "rule of lenity" to resolve the asserted ambiguity in his favor.

For the reasons stated in footnote 10, we find no ambiguity, and the "rule of lenity" is therefore inapplicable to our construction of subdivision (f)(1). Nor does the decision in *Smith* change our analysis of appellant's construction of subdivision (f)(1) that underlies appellant's claim that there was insufficient evidence of a violation of that subdivision. In *Smith,* the registrant's defense to the charge of violating subdivision (f)(1) was that he mailed

---

"while residing in California," he reasonably assumed that, when he left California and established residency in Texas, none of the provisions of section 290, including the duty to notify of a change in address, applied to him. (*Franklin, supra,* at p. 254.) The court agreed that, prior to the amendments, the statute was at least ambiguous as to whether a person who changes his or her address by becoming a resident of a different state nevertheless must provide change of address notification. The court therefore gave the defendant the benefit of the interpretation in his favor, reasoning that he had established residency in Texas, before the 10-day notification period expired, and therefore no violation occurred while he was residing in California. (*Id.* at pp. 255–256.) Apart from the obvious distinction that the *Franklin* court was addressing a *prior* version of the statute and a different question of statutory interpretation, the *Franklin* court did state that "[c]hange of address notification was required within 10 days *of moving.*" (*Id.* at p. 256, italics added.) Also, its analysis stating that the 10-day period expired "after defendant established residency in Texas" appears to assume that the 10-day period was triggered as soon as the defendant left his last registered address.

the required notification two days after he moved. He testified that he moved out of his last registered address in Long Beach, California, on April 10, 1999, and stayed first in Colorado, and later moved to New York. He testified that, on April 12, 1999, he mailed a change of address notification to a detective in the Long Beach Police Department. The detective testified that he never received it. In response to the jury's questions about the meaning of a failure to "inform," the court instructed the jury that, "*[I]t is the obligation of the person who has to register to see that written notification is received by the police department.*" Our Supreme Court held this instruction was incorrect and prejudicial, in light of the defense presented that Smith mailed the notification within the five-day period. The court explained that the language in subdivision (f)(1) imposing a duty to "inform, in writing within five working days," does not give the registrant "clear notice" that the duty to inform included the duty to ensure that notice was also actually received. The court held that, based upon the statutory language, a registrant "would understand that they must use a form of written communication that is reasonably reliable," which would include mailing. (*Smith,* 32 Cal.4th 792, at p. 799.) The court also rejected Smith's contention that the California court lacked jurisdiction to prosecute him for his offense because California generally applies its Penal Code only to crimes committed within the state. The court stated that subdivision (f)(1) "gives the registrant five working days after changing his residence in which to inform the police of his move; here the five-day period elapsed when defendant was in Colorado." (*Smith,* at p. 802.) Nevertheless, the court reasoned that the obligation to notify arose from his criminal offenses in California, he incurred the legal obligation to notify in California, and could not escape prosecution by claiming that he was no longer a California resident, "when performance is due." (*Ibid.*)

██ Although appellant engages in imaginative legal parsing in an effort to construct an analogy between the issue of statutory construction addressed in *Smith* and the one he advances in this case, we find none. The *Smith* court was neither asked to, nor did it, reach a contention that no duty under subdivision (f) arises, and the five-day notice period is not triggered, if the registrant moves out of the last registered address and thereafter never stays in one place long enough to have a new address or location. The analysis in *Smith* of both the claim of instructional error, and of lack of jurisdiction, assumes that the five-day notification period was triggered when he moved, and that it expired five days later while he was in Colorado. This assumption is arguably consistent with our construction that the notification period is triggered when the registrant "changes" his or her address or location, which includes moving out of the last registered address. It is, however, axiomatic that cases do not stand for propositions not presented or decided, and we therefore do not suggest that the decision in *Smith,* directly or

indirectly, resolves the question whether the novel interpretation of subdivision (f)(1) appellant advocates is reasonable. We hold only that *Smith* does not change our decision that appellant's interpretation is not, and therefore must be rejected.

In sum, even under appellant's construction of subdivision (f)(1), substantial evidence supports the finding that appellant violated subdivision (f)(1) by changing his residence address and failing to notify of his new address or location. We also hold that the only reasonable construction of subdivision (f)(1) is that the duty to notify under subdivision (f)(1) and the five-day notification period are triggered upon a *change* of address or location, and that a person who moves out of the last registered address will always either have a new address, or a new "location," of which to notify within five days. The facts of this case do not require us to decide whether a violation of subdivision (f)(1) occurs when a registrant moves out of the last registered address, becomes a transient, and claims either not to have stayed in one place long enough to have a new "location," or not to know what information to provide in order to comply.

## II.

### Due Process Challenge to Section 290

Appellant also advances a due process challenge to section 290, subdivisions (a)(1)(A) and (f)(1) on the ground that the terms "location" and "is located" as used in these subdivisions are unconstitutionally vague. Specifically, he contends that persons required to register under these subdivisions have insufficient notice of what a location is, and what constitutes a change of location, and therefore are unable to determine whether, or when, they have a duty to register, or where they should register, under subdivision (a)(1)(A), and when and whether they have relocated, necessitating notification of the last registering agency of the change, under subdivision (f)(1).

In support of his argument that the terms "location" and "is located" are vague, appellant hypothesizes a multitude of factual scenarios involving the application of the challenged terms to persons who are homeless, moving during the day among various places and sleeping at different encampments, shelters, or wherever they can find on the street. He also contends that the vagueness of these terms authorizes or encourages discriminatory enforcement. (See, e.g., *City of Chicago v. Morales* (1999) 527 U.S. 41, 56–58 [144 L.Ed.2d 67, 119 S.Ct. 1849] [criminal statute may be void for vagueness if it fails to provide notice of the conduct prohibited, or if it authorizes arbitrary or discriminatory enforcement].)

The arguments with respect to subdivision (a)(1)(A) are irrelevant, because appellant was convicted only of violating subdivision (f)(1). With respect to subdivision (f)(1), Division Three of this district recently held that the term "location" in this subdivision, *as applied to a transient sex offender,* is unconstitutionally vague. (*North, supra,* 112 Cal.App.4th 621.) The defendant in that case was convicted of violating section 290, subdivisions (a)(1) and (f)(1) when he left his last registered address and became a transient, sleeping on the streets or in bus stations, and changing the place where he stayed nightly. He testified that he knew he could register as a transient. However, he had been told by the local law enforcement authority with which he last registered that, even if he was sleeping on the streets, he had to provide an address, and he had "no idea" what address to provide because he was constantly moving during the period of homelessness. (*North, supra,* at pp. 626–627.) In a narrowly written opinion, Division Three held that, as applied to a *transient sex offender* who does not have an address, the term "location" in subdivision (f)(1) is unconstitutionally vague, and reversed his conviction for violating subdivision (f)(1). Although it held the term "located" in subdivision (a)(1)(A) was *not* unconstitutionally vague as applied to "reregistration after a change from residential to transient status," it nevertheless reversed the conviction under that subdivision as well, finding insufficient evidence of actual knowledge, because the defendant had been misinformed that he had to provide an address even if he were homeless, and he had testified that he "had no idea" what address he could or should provide, because, after leaving his last registered address and becoming homeless, he was moving constantly.

The decision in *North, supra,* 112 Cal.App.4th 621, however, expressly limits its holding to the application of subdivision (f)(1) to a *transient* sex offender, because of the failure of the statute to clarify the term "location" and what constitutes a change in location. The court found no vagueness problem with respect to the notification requirements of subdivision (f)(1) as it applies to "changes of address." (*North,* at p. 635.) Appellant's conviction for violating subdivision (f)(1) does not depend upon the application of the term "location," because appellant was not a transient sex offender who was convicted of changing from one "location" to another, or from an address to a "location," without notification to the authority with whom he last registered. This is not a case where, for example, a person is homeless and changes the place where he sleeps from under the freeway to a nearby doorway, and then is prosecuted under subdivision (f)(1) for failing to notify of a change in "location." Instead, appellant was last registered at the residence address of the Garden Motel and, according to his own testimony, he left the Garden Motel and moved to Oregon to *avoid* living on the streets as a transient.

As we held in part I, *ante*, there was substantial evidence that he last registered in Redwood City at the Garden Hotel address, and that he changed his address to an address or addresses in Oregon without providing notification to the Redwood City police. Therefore, the decision in *North,* declaring subdivision (f)(1) unconstitutionally vague as applied to a sex offender who leaves his last registered address and becomes homeless, simply has no application to the facts of this case.[12]

■ We therefore do not address appellant's contention that in order to have a "location," within the meaning of subdivision (f)(1), "he would have to be present at it for five consecutive days." (See *North, supra,* 112 Cal.App.4th at pp. 634–635.) This case simply does not present any issue concerning the meaning of the terms "location" or "is located." Appellant was convicted of violating subdivision (f)(1) based upon substantial evidence that he moved out of his last registered address and failed to notify the Redwood City Police Department of his new address. Appellant therefore lacks standing to assert a due process challenge based upon the vagueness of these terms. (*Bowland v. Municipal Court, supra,* 18 Cal.3d at p. 492.)[13]

III.–IX.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[12] A defendant who falls "squarely within" the reach of a statute has no standing to challenge its vagueness as it "might be hypothetically applied to the conduct of others." (*Parker v. Levy* (1974) 417 U.S. 733, 756 [41 L.Ed.2d 439, 94 S.Ct. 2547]; see also *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].) We therefore decline to consider the various factual scenarios appellant poses concerning the application of the term "location" to a person who is or becomes homeless, and the difficult questions these factual scenarios pose in terms of whether the statute provides notice to a transient person as to when they have changed a location, and what the new location might be.

[13] We also note that it is possible to give "location" a reasonable and practical construction, in the factual context where a registrant violates subdivision (f)(1) by leaving his last registered address in a jurisdiction, and entering a new jurisdiction within or outside the State of California where he does not have an address. In that event, the offender is at least "located" or has a "location" somewhere within the new jurisdiction. If "location" in the context of an interjurisdictional change of address or location were construed to mean "jurisdiction," then by informing the last registering agency that the registrant is now in another jurisdiction, even without an address, the statutory objective of tracking the whereabouts of sex offenders is met by at least allowing the last registering agency to notify law enforcement in the new jurisdiction of the offender's presence within their jurisdiction.

*See footnote, *ante,* page 591.

## CONCLUSION

The judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

A petition for a rehearing was denied April 5, 2004, and the opinion was modified to read as printed above. On the court's own motion the petition for review by the Supreme Court was denied May 19, 2004.